**Glen Dale CASTLE, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 24068.**

United States Court of Appeals Fifth Circuit.

Aug. 12, 1968.

David Bolton, Dallas, Tex., for appellant.

Bill Callaway, Asst. U. S. Atty., Fort Worth, Tex., for appellee.

Before WISDOM, THORNBERRY and GOLDBERG, Circuit Judges.

THORNBERRY, Circuit Judge.

For the third time, Appellant Castle comes to this Court as a result of his 1960 conviction for transporting five forged American Express money orders in interstate commerce in violation of 18 U.S.C. § 2314. The indictment contained five counts, making each of the money orders constitute a separate offense. Castle was convicted on all five counts and sentenced to ten years' imprisonment on the first count and five years on counts two through five. Counts two through five were concurrent, but consecutive to count one, making a total of fifteen years' imprisonment. This Court affirmed the conviction, 287 F.2d 657, reasoning that the transportation of each money order was a separate offense and that therefore the trial judge had not imposed a multiple sentence for a single transportation. The Supreme Court disagreed and held that Castle was guilty of only one offense. Our judgment was vacated and the case remanded to the district court "for resentencing in accordance with this opinion." 368 U.S. 13, 82 S.Ct. 123, 7 L.Ed.2d 75. On remand, appellant was resentenced to ten years' imprisonment and fined $10,000.[1] He again appealed to this Court but we affirmed the conviction, reasoning that the trial judge correctly limited the proceedings to resentencing and that "the sentence was in accordance with the mandate of the Supreme Court and the applicable provisions of law." 304 F.2d 871.

On April 5, 1965, pursuant to 28 U.S.C. § 2255, Castle filed a motion to vacate his conviction. The district court denied the motion and this Court subsequently denied leave to appeal in forma pauperis. He thereafter secured counsel to represent him on this appeal. His present status necessitates consideration of whether Section 2255 is available to him. Appellant has served the required period of imprisonment to obtain mandatory release under his ten-year sentence. He has also served the thirty days required for nonpayment of the committed fine, signed the pauper's affidavit required by 18 U.S.C. § 3569, and been released from prison.[2] As he is no longer "in custody," it is urged that he cannot use Section 2255 to attack the sentence or fine. See Fooshee v. United States, 5 Cir. 1953, 203 F.2d 247. However, since he was in custody at the time he filed the present application, federal jurisdiction is not defeated by his release prior to completion of proceedings on such application. Carafas v. La-Vallee, 1968, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554. Moreover, his motion presents a real and substantial controversy, and could be treated as a motion for declaratory judgment under Rule 57, Fed.R.Civ.P. Wacker v. Bisson, 5th Cir. 1965, 348 F.2d 602.[3]

Appellant alleges two grounds of error for our consideration: First, that the imposition of the $10,000 fine on resen-

1. 18 U.S.C. § 2314 provides for a fine of not more than $10,000, imprisonment for not more than ten years, or both. Thus the court imposed the maximum sentence for a single offense.

2. The procedure relating to the fine is governed by statute. Under 18 U.S.C. § 3565 the defendant is to be imprisoned until the amount of the fine is paid; however, under 18 U.S.C. § 3569, a provision is made that where such convict has been imprisoned for 30 days "solely for the nonpayment of such fine," he may be released from the penitentiary upon the filing of a pauper's affidavit.

3. There is still a real controversy present because taking a pauper's affidavit and serving an additional 30 days does not affect Castle's obligation to pay the $10,000 fine. The statute, 18 U.S.C. § 3569, merely provides a procedure whereby an indigent convict may avoid further imprisonment under a judgment committing him until the fine is paid. See Smith v. United States, 9th Cir. 1944, 143 F.2d 228; United States v. Jenkins, S.D.Ga.1956, 141 F.Supp. 499, aff'd per curiam, 238 F.2d 83. Indeed, after release from prison, the convict's property is vulnerable to governmental proceedings without any apparent time limit on the government for asserting the claim. United States v. Baird, 2d Cir. 1957, 241 F.2d 170; United States v. Jenkins, supra.

tencing was an increase in his original sentence and therefore a violation of the double-jeopardy clause of the fifth amendment and an impairment of his right to appeal in contravention of the due-process clause of the fifth amendment; second, that fining an indigent violates the due-process clause of the fifth amendment and the equal-protection clause of the fourteenth amendment as implemented by the due-process clause of the fifth amendment.[4]

## I.

The question of whether a trial judge can increase a sentence on remand is currently being debated in criminal-law circles and demands resolution of a head-on clash of equally viable positions. See e. g. Agata, Time Served Under a Reversed Sentence or Conviction: A Proposal and a Basis for Decision, 25 Mont.L.Rev. 3 (1963); Alstyne, In Gideon's Wake: Harsher Penalties and the "Successful" Criminal Appellant, 76 Yale L.J. 603 (1965); Whalen, Resentence Without Credit for Time Served: Unequal Protection of the Laws, 35 Minn.L.Rev. 239 (1951). Until recently it was believed that the trial judge could increase the sentence if he stayed within the statutory limits.[5] Indeed, this belief is supported by the only Supreme Court decisions on the subject. Stroud v. United States, 1919, 251 U.S. 15, 40 S. Ct. 50, 64 L.Ed. 103; Murphy v. Commonwealth of Mass., 1900, 177 U.S. 155, 20 S.Ct. 639, 44 L.Ed. 711. These decisions are based primarily on the rationale that by appealing the defendant voids all existence and effect of the original sentence and waives any double-jeopardy claim. Subsequent developments have indicated that the *Stroud* rule is also bottomed on the traditional discretion accorded trial judges in sentencing and the accompanying hesitancy of appellate courts to enter the sentencing area. See, United States ex rel. Starner v. Russell, 3 Cir. 1967, 378 F.2d 808; Shear v. Boles, N.D.West Va.1967, 263 F.Supp. 855. Much of this reluctance is based on the fact that the modern sentence is viewed as an individualized assessment of the ideal number of years needed to punish or rehabilitate the prisoner. Note, 80 Harv.L.Rev. 891, 894 (1967). This gives society an interest in fair punishment and effective rehabilitation, Rubin, The Law of Criminal Correction, 116–118 (1963), and makes it just to take a fresh look at the defendant on remand to assure that this interest was sufficiently vindicated the first time around. Recently, however, appellate courts have begun to restrict trial judges who in the name of discretion are violating constitutional rights. Gainey v. Turner, E.D.N.C.1967, 266 F. Supp. 95, 102.[6]

In the increase-of-sentence area, the erosion of the absolute discretion of the

4. Nothing in our prior opinions precludes the assertion of these contentions despite the argument that this appeal is simply an attempt to raise issues already adjudicated by this Court. All prior proceedings have attacked the legality of the conviction and not the sentence. 304 F.2d 871. Moreover, this Court specifically stated that its prior holding was without prejudice to appellant's right to bring a § 2255 motion to vacate the sentence. 304 F.2d 871. By the same reasoning, appellant is not precluded from invoking the declaratory-judgment rule.

5. This rule is followed by numerous federal and state courts. United States ex rel. Starner v. Russell, 3d Cir. 1967, 378 F.2d 803; Robinson v. United States, 6th Cir. 1944, 144 F.2d 392; Shear v. Boles, N.D.West Va.1967, 263 F.Supp. 855; Kohlfuss v. Warden of Connecticut State Prison, 149 Conn. 692, 183 A.2d 626 (1962); Mann v. State, 23 Fla. 610, 3 So. 207 (1887); State v. Morgan, 145 La. 585, 82 So. 711 (1919).

6. Evidence that defendants consistently received an increased sentence on remand suggested improper conduct by trial judges. Note, 1965 Duke L.J. 395, 399 n. 25. This evidence has been used to answer the contention that the trial judge must have this discretion unless his traditional role is to be undermined. It has been said that this latter position begs the question of whether the judge should have this much discretion. Marano v. United States, 1st Cir. 1967, 374 F.2d 583.

trial judge started with the rejection of the "waiver theory" as a "simplistic rationale" and "sporting theory of justice." See Whalen, supra, at 893. The most exhaustive treatment of the topic to date is the Fourth Circuit's recent decision in Patton v. State of North Carolina, 4th Cir. 1967, 381 F.2d 636, cert. denied, 1968, 390 U.S. 905, 88 S.Ct. 818, 19 L.Ed.2d 871.[7] There the defendant was denied five years' credit as a result of employing a post-conviction remedy to rectify the fact that he was tried in violation of *Gideon*. The court had three reasons for invalidating the increase: It constituted double punishment for the same offense as condemned by the fifth amendment; it constituted a denial of due process since defendant was required to waive his right to a fair trial or his plea of former jeopardy as a price of exercising his post-conviction remedy; and it violated the equal-protection clause of the fourteenth amendment because the threat of harsher punishment fell solely on those who sought correction of their sentences by post-conviction remedy, thus creating an irrational basis for selection of the class on which the burden fell and an irra-

tional means of effectuating any valid state policy[8]. For these reasons the first sentence had to be a ceiling for punishment on remand. In *Patton* and the decisions which agree with its reasoning, the increase in the sentence is apparent;[9] however, the peculiar facts of the instant case make the increase less than palpable.

Appellant's insistence that his sentence has been increased is based on his interpretation of the Supreme Court's decision to remand the case "for resentencing in accordance with this opinion" because appellant was guilty of but one offense. 368 U.S. 13, 82 S.Ct. 123, 7 L.Ed.2d 75. He asserted that the Supreme Court meant by this holding that there could be no cumulation of punishment. This conclusion leads to his second assertion that since the Court did not declare the ten-year sentence on count one invalid or illegal in any way, it thereby affirmed the sentence on that count and eliminated the sentence on the other four counts. Accordingly, when the district court resentenced appellant, the ten-year sentence on count one was the maximum that could be imposed. This construction is specious.

7. The court in *Patton* justified rejecting the waiver theory by relying on Green v. United States, 1957, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199. Although the *Green* decision has certainly been interpreted as undercutting *Stroud*, see *Alystyne*, supra, it should be noted that the Court in *Green* found *Stroud* "clearly distinguishable." 355 U.S. at 194, 78 S.Ct. at 227.

8. This consideration must be viewed under the fifth amendment, which lacks an equal-protection clause, since this is a federal prosecution. Thus a defendant must show that he has suffered from discrimination so invidious as to violate due process. Schneider v. Rusk, 1964, 377 U.S. 163, 84 S.Ct. 1187, 1190, 12 L.Ed.2d 218; Bolling v. Sharpe, 1954, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884; Currin v. Wallace, 1939, 306 U.S. 1, 59 S.Ct. 379, 83 L.Ed. 441.

9. See e.g. Marano v. United States, 1st Cir. 1967, 374 F.2d 583 (sentence increased from three to five years);

Gainey v. Turner, E.D.N.C.1967, 266 F.Supp. 95 (denial of credit); People v. Henderson, 60 Cal.2d 482, 35 Cal.Rptr. 77, 386 P.2d 677 (Sup.Ct.1963) (life to death); State v. Wolf, 46 N.J. 301, 216 A.2d 586, 12 A.L.R.3d 970 (1965) (life to death). Some courts have hinted that the judge can increase the sentence if he provides a rational predicate for the increase either by articulating the reasons which motivated him or by including in the record the data on which he relied in order to provide the appellate court with some discernible reason for the increase. Patton v. State of North Carolina, W.D.N.C.1966, 256 F.Supp. 225. Other courts will require no articulation and simply examine the record for the reasons. United States v. White, 7th Cir. 1967, 382 F.2d 445, 450.

Still others reason that unless the defendant can establish personal hostility on the part of the judge there is no reason not to allow an increase. Shear v. Boles, N.D.West Va.1967, 263 F.Supp. 855.

The issue before the Supreme Court was whether the five money orders constituted five separate offenses, and the Supreme Court held that they did not. The fact that Castle could not be imprisoned for fifteen years is not, however, authority for the proposition that he could not on remand be sentenced to the maximum punishment for one offense. Hence, we believe that all the Court's decision imports is that on remand appellant could not receive a sentence greater than that which could be imposed as to a single offense under the statute. None of the individual counts charging separate offenses in the indictment had an independent validity restricting the trial court on remand. In effect, appellant was to be resentenced for the commission of a single offense embodying all five money orders. For this reason, he cannot justifiably interpret the mandate as voiding counts two through five and affirming count one. The Court simply said that the sentence was excessive and illegal because appellant's conduct did not constitute five offenses but only one; it could not have affirmed count one since that count charged Castle with transportation of only one money order when, in fact, he transported five. Consideration of decisions that restrict the trial court's discretion support our conclusion.

In Ekberg v. United States, 1st Cir. 1948, 167 F.2d 380, the accused had been sentenced to two years and one month on count one and two years and one month on counts two and three, counts two and three to run concurrently but consecutively to count one, making an aggregate of four years and two months. On appeal, count one was held invalid because it failed to charge an offense, but the court affirmed the judgments on counts two and three. Since the appellant had already served two years and one month on count one, the question arose whether he could be resentenced on counts two and three. It was urged that the judge should be able to make counts two and three consecutive since he could have done so originally and so that the total length of time in prison would be the same as originally intended. The First Circuit disagreed:

> It is too late to go back and start over again. The concurrent sentences on counts 2 and 3 were valid as originally imposed. Disregarding the invalid sentence under count 1, and attributing the time served to the sentences under counts 2 and 3, as must be done, it will be seen that appellant has fully paid the penalty, extracted by society through the sentence of a competent court, for the only offenses of which he was properly convicted. It would trench upon the double jeopardy clause if appellant were now faced with the possibility of an increase of the sentences imposed under counts 2 and 3.

167 F.2d, at 388.

A similar result was reached in Miller v. United States, 2d Cir. 1945, 147 F.2d 372, where the court refused to allow an increase in count two when it determined that it embraced and included the first count that was eliminated on appeal. The court remarked that the fifth amendment prohibited the trial judge from setting aside the valid sentence on count two. Both *Miller* and *Ekberg* suggest that the vice which the fifth-amendment prohibition against double punishment seeks to forbid is an increase in the valid portion of the original sentence in order to offset another error in the sentence.[10]    See United

---

10. The decisions in which the aggregate time in prison has been increased provide another good example of the application of this same general principle. In United States v. Walker, 4th Cir. 1965, 346 F.2d 428, the defendant was sentenced in his absence to three years in prison. When he got the sentence set aside on that ground, the trial court then increased the sentence to five years. Since the aggregate time in jail was increased the court held that the resentencing violated the fifth amendment because it punished the defendant twice for the same offense. Comment, Twice in Jeopardy, 75 Yale L.J. 262, 267

States v. Adams, 6th Cir. 1966, 362 F.2d 210; Crowe v. United States, 6th Cir. 1952, 200 F.2d 526; Wilson v. Bell, 6th Cir. 1943, 137 F.2d 716.

Another decision supporting this conclusion is United States v. Chiarella, 2d Cir. 1954, 214 F.2d 838, where the accused was convicted on a four-count indictment for counterfeiting Federal Reserve notes. His sentence was as follows: On counts one, two, and three, he received ten years; count four carried a five-year sentence; counts one, two, and four were consecutive and concurrent with count three, making a total of twenty-five years. On appeal counts one and two were held duplicitous and dismissed; the concurrent sentences on counts three and four were affirmed. When the accused was resentenced, counts three and four were made consecutive. The court held that the trial judge could not make the sentences consecutive though he could have done so originally. This holding was based on the fact that counts three and four were specifically affirmed by the Supreme Court. The court's reasoning indicates that a different conclusion would have been reached if the entire original sentence had been inoperative. Id. at 842.

The decision of Kennedy v. United States, 9th Cir. 1964, 330 F.2d 26, provides an example of the approach urged by appellant of simply "lopping off" the excessive portion of the sentence. There the defendant received a sentence on a count that was above the statutory maximum for the offense. On appeal the excessive portion of that count was invalidated, but the rest of the sentence was affirmed, including its concurrent feature. On resentence, however, the trial judge changed the sentence to make the terms consecutive. The Ninth Circuit voided the increase, reasoning that the judge could not increase or make more severe the "valid portion of the sentences originally imposed." 330 F.2d at 27. It was also this valid portion of the first sentence which precluded the argument that because the trial judge could have imposed consecutive sentences at first, he should be able to do so on resentencing. The court said that once the counts were affirmed the fifth-amendment prohibition against double punishment prevented the action. It is implicit in this holding that the court was certain that the only portion of the original sentence removed was the excessive number of years. See Duggins v. United States, 6th Cir. 1957, 240 F.2d 479; Rutledge v. United States, 5th Cir. 1944, 146 F.2d 199.

Unlike our situation, the courts in *Ekberg, Miller, Chiarella* and *Kennedy* were clear as to what part of the sentence was invalid and what part was specifically affirmed. Indeed, they were able to determine exactly what was left of the sentence after appellate-court action.[11] These factors prompted the courts to hold that the resentence could not be more than was originally assessed under the remaining valid counts. Since in the instant case it is not clear what remained after the sentence was disapproved and since the type of error was different from the errors in the other cases, we cannot justify extending *Ekberg, Miller* and *Kennedy* so as to invali-

---

(1965). The court was careful to point out that the three-year sentence was not a nullity and was within the authorized limits of punishment. Cases in which the aggregate time in jail has been increased also make it easy for courts to conclude that this risk of a heavier sentence impedes resort to the appellate process and thus violates the due-process clause. See Walsh v. United States, 9th Cir. 1967, 374 F.2d 421; United States v. Sacco, 2d Cir. 1966, 367 F.2d 368.

11. In *Ekberg* the court knew that count one was bad but that counts two and three were specifically affirmed on appeal. In *Miller*, it was clear that count one was encompassed by count two, which had been approved on appeal. In *Kennedy*, the court knew that the sentence on one count was excessive and that the rest of the original sentence was valid.

date the trial judge's action. There is absolutely no foundation to the contention that the Supreme Court affirmed some of these counts and invalidated the others. This is true because once the trial judge's error was corrected, none of the counts charged appellant with transportation of five money orders in interstate commerce, which was the only valid basis for his conviction. Therefore, there was not an increase in a valid count or valid sentence that had become the final judgment. See Pugliese v. United States, 1st Cir. 1965, 353 F.2d 514; *Chiarella*, supra, 214 F.2d at 841. Instead, the trial judge had to impose an entirely new sentence.[12]

All of these decisions indicate that no court has considered a factual pattern similar to the one before us. In order to determine whether the advanced distinctions have legal as well as factual significance, one final decision will be discussed. In Whaley v. State of North Carolina, 4th Cir. 1967, 379 F.2d 221, the defendant was convicted and sentenced as follows: Case 5632—count one: breaking and entering (five years); count two: larceny of $500.00 (five years); count three: safecracking (ten years). Counts one and two were concurrent but consecutive to count three. Case 5632-B—count one: breaking and entering (five years); count two: larceny of $1200.00 (five years). The sentences in case 5632-B were concurrent but consecutive to the sentences in case 5632. The total imprisonment imposed, therefore, was twenty years. On direct appeal to the North Carolina Supreme Court, the safecracking count (ten years) was set aside on non-constitutional grounds. The case was then remanded to the trial court for clarification of the remaining sentence. The trial judge imposed a sentence of ten years instead of five for each of the breaking and entering counts, making the time to be served on the surviving four counts equal to the term originally imposed (twenty years). On a subsequent habeas-corpus appeal, the Fourth Circuit said that the trial judge could not change the sentences on the breaking and entering counts.

One ground urged by the defendant in *Whaley* was the "implied acquittal theory" adopted by the Supreme Court in Green v. United States, 1957, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199. This doctrine has been extended to punishments by the California Supreme Court in People v. Henderson, 60 Cal.2d 482, 35 Cal.Rptr. 77, 386 P.2d 677 (1963). Application of this doctrine to the instant case would demand the conclusion that since the trial judge did not impose the $10,000.00 fine the first time, he

12. The "entirely new sentence" rationale has been used to explain or distinguish Kitt v. United States, 4th Cir. 1943, 138 F.2d 842. In that case, the defendant was convicted on five counts and received the following sentence: On counts one-four, four years and $200; on count five, two years and $200; counts two, three, four and five were concurrent with count one. Count four was eliminated on appeal by confession of error and it was discovered that the maximum sentence that could be given on counts one, two and three was two years. The two-year sentence on count five was affirmed. On remand the accused was given two years on counts one, two and three, but count two was now made consecutive to counts one and three. The defendant contended that the district court on remand was limited solely to striking off the excessive portion of the sentence, but the court disagreed and allowed the change. This holding would seem to conflict with the other cases considered since the other parts of the sentence were valid as originally imposed. The court went on to comment, however, that it had intended to remand the case for a complete resentence and that is how the cases discussed above have distinguished it. The reasons for concluding that there should be an entirely new sentence seem applicable here. The court reasoned that if all the district court could do was strike the excessive portion of the sentence, the remand was a "foolish gesture" since the appellate court could have accomplished this purpose. It further noted that unless the mandate "clearly and explicitly" confined the district court to the original sentence, it had the power to impose any sentence within the limits prescribed by the statute.

"impliedly acquitted" defendant of that punishment and thus should not be allowed to impose it on the resentence. The court in *Whaley* rejected this reasoning, citing the *Patton* case, in which it had remarked that to say the defendant was "acquitted" at the first trial of any penalty greater than now imposed was as much fiction as saying he "waived" the benefit of his initial sentence in appealing his conviction.[13] Instead, the court in *Whaley* chose to emphasize the aspect of the double-jeopardy doctrine that bars double punishment for the same offense. Since Castle was first convicted for five offenses and then resentenced for one offense, it is apparent that his second punishment was not for the "same offense" and thus was not the double punishment condemned by *Whaley*. The court in *Whaley* also commented that the best example of this double punishment is the increase of a "valid sentence."[14] The discussion of *Chiarella, Ekberg, Miller* and *Kennedy* has established that there was no increase of a valid sentence in the present case. Finally, it was held that the state could not, consistently with due process, require an accused to relinquish his constitutional right to protection from multiple punishment as a condition of correcting an erroneous conviction. Since we have concluded that defendant had no valid double-jeopardy claim, he has not been subjected to this condition.

There is, however, a segment of this due-process argument that requires further treatment. Although there is still conflict on the question of whether one has a constitutional right to appellate review, it is undisputed that once appellate review is provided, due process requires that it remain unfettered.[15] It is said that the state should keep post-conviction remedies unfettered because it has no interest in preserving erroneous judgments. Indeed, it should encourage constant and creative challenge of official decisions. U. S. Attorney General's Committee on Poverty and the Administration of the Criminal Law 10–11 (1963). The burden in the area now under consideration is the risk of heavier sentence on remand. This threat of a higher sentence has been called an 'incredible dilemma," United States v. Green, supra, or "grisly choice," Fay v. Noia, supra: "It is believed violative of due process because it is too high a price to exact for invoking appellate review. Indeed, the court in *Patton* reasoned that whenever one has to appeal under the risk of a more severe punishment, the appellate system is sanctioning a "barter theory of fairness" by requiring the accused to play "Russian roulette" with his rights. Cf. Smartt v. Avery, 6th Cir. 1967, 370 F.2d 788.

13. This "implied acquittal" theory has been soundly criticized. The main attack has been on *Henderson's* extension of the doctrine to the punishment area. Note, 1965 Duke L.J. 915. This Note would confine *Henderson* to capital cases and even then on the basis that the appellate process should not be unreasonably impaired by the risk of higher sentences. For additional criticisms of the doctrine see *Alstyne*, supra; Note, 13 Kan.L.Rev. 155 (1964); Note, 50 Va.L. Rev. 559 (1964).

14. It should be noted that an increase is required because only then is there "that kind of double jeopardy * * * [which] has subjected him [to] a hardship so acute and shocking that our policy will not endure it * * * [and] violate[s] those 'fundamental principles of liberty and justice which lie at the base of all our civil and political institutions.'" Patton, supra, 381 F.2d at 643; Palko v. State of Connecticut, 1937, 302 U.S. 319, 328, 58 S.Ct. 149, 153, 82 L.Ed. 288; State of Louisiana ex rel. Francis v. Resweber, 1947, 329 U.S. 459, 67 S.Ct. 374, 91 L.Ed. 422.

15. Draper v. State of Washington, 1963, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899; Douglas v. People of State of California, 1963, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811; Fay v. Noia, 1963, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837; Smith v. Bennett, 1961, 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39; Burns v. State of Ohio, 1959, 360 U.S. 252, 79 S.Ct. 1164, 3 L.Ed.2d 1209; Griffin v. People of the State of Illinois, 1956, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891.

■ The question to be decided is whether Castle faced the same "grisly choice" because the imposition of the sentence of ten years and the fine of $10,000.00 would be harsher than the original sentence of fifteen years. Cf. Marano v. United States, 1st Cir. 1967, 374 F.2d 583. It seems clear that if the second sentence is viewed as more severe punishment than the first, the *Patton* rationale would demand the conclusion that the threat of it might impede the correction of an erroneous conviction. Although the parties have not directly considered the issue of whether it is more onerous to pay a $10,000.00 fine than spend five extra years in jail, appellant's counsel suggests why he thinks it would be. This fine is characterized as a "Damoclean sword" suspended over the appellant's head since if at any time his financial condition improves, the Government can proceed against his property and collect the fine. This threat has a harmful impact on his family and lessens the possibility of his rehabilitation into a useful citizen. On the other hand, it is not proven that this will in fact be the result since the details of appellant's financial condition are not in the record. Also, it could be argued that any reasonable man would rather be fined than spend five extra years in jail.[16] Finally, since the enforcement of the statute is discretionary, it may never be enforced unless substantial collection is assured. Consequently, fining an indigent may be no punishment at all. He may never have enough money to justify a suit against his property for collection. There are simply too many possibilities left open for us to determine the impact this fine had on appellant. Since we cannot conclude from this record that the imposition of the fine instead of five years in jail subjected appellant to a "hardship so acute and shocking that our policy will not endure it," Palko v. State of Connecticut, supra, 58 S.Ct. at 153, or that a fair and enlightened system of appellate procedure is impossible if a person is forced to make this choice, we think it is more judicious to defer to the trial judge who possessed the relevant data on which a rational decision could be based. We simply cannot discern such a significant encroachment upon personal liberty as to justify overturning the trial judge's decision.

Although it can be argued with considerable force that in some instances the first sentence should serve as a ceiling for any subsequent sentence, the facts of this case do not measure up to the denial of five years' credit in *Patton*, or the imposition of a death sentence instead of life in *Henderson*. Our decision is influenced by the context in which we operate. Until recently one of the few settled rules of criminal law was that the trial judge had absolute discretion to increase the sentence to a term within the statutory limits. Before we carve out another exception, we should be sure that constitutional rights have truly been violated. In the instant case that conclusion is too speculative to justify judicial pioneering.

II.

■ Appellant's second contention is that fining an indigent violates the due-process clause of the fifth amendment and the equal-protection clause of the fourteenth amendment as implemented by the due-process clause of the fifth amendment. The major contention is that the statute sanctions invidious discrimination since a poor man would have to go to jail for thirty days if he could not pay the fine whereas the man with

16. There are several reasons why imprisonment is ordinarily more onerous than payment of a fine. First, imprisonment brings not only a financial loss in wages but also the loss of all other advantages and privileges of being at liberty. Comment, Equal Protection And the Use of Fines As Penalties For Criminal Offenses, 1966 Ill.L.F. 460. Second, society apparently attaches a greater stigma to serving a prison sentence than to payment of a fine. Note, 16 Stan.L. Rev. 394, 412 (1964). For additional support see, Note, 64 Mich.L.Rev. 938 (1966); Note, 50 Minn.L.Rev. 1152 (1966).

money would not. Since Castle has already finished his thirty days in jail, this point is moot. This being so, appellant is left with the assertion that the $10,000 fine of an indigent was an excessive punishment. Recent decisions by this Court foreclose this argument. In Rodriguez v. United States, 1968, 394 F.2d 825 [May 17, 1968] we stated:

> The question of appellate review of sentencing has recently received much advocacy as a needed reform to prevent unjustifiable disparities in the sentences meted to co-defendants. The arguments pro and con for such a review have almost universally been left to the legislative branch of government. Appellate courts have generally refused to disturb the trial court's discretion in this matter unless the punishment is so disproportionate to the offense committed and to the sentences received by co-defendants as to be completely arbitrary and shocking to the sense of justice and thus to constitute cruel and unusual punishment in violation of the Eighth Amendment.

The cases are legion that a sentence within the statutory limits is not cruel and unusual punishment. See Hedrick v. United States, 10th Cir. 1966, 357 F.2d 121; United States v. Pruitt, 4th Cir. 1964, 341 F.2d 700; United States v. Martell, 4th Cir. 1964, 335 F.2d 764; Smith v. United States, 10th Cir. 1959, 273 F.2d 462. As stated in *Rodriguez,*

> If there is one rule in the federal criminal practice which is firmly established, it is that the appellate court has no control over a sentence which is within the limits allowed by statute.

Other recent decisions of this Court agree that "a sentence within the statutory limits is not reviewable on appeal and does not ascend to the orbit of a constitutional violation." See Henderson v. Dutton, 5th Cir. 1968, 395 F.2d 209 [June 24, 1968]; Lacaze v. United States, 5th Cir. 1968, 391 F.2d 516.

It might be argued that the excessive fining of an indigent violates substantive due process of law because it does not serve a legitimate end of punishment and, in fact, interferes with rehabilitation. The Supreme Court has recently indicated, however, that rehabilitation is not the only end of punishment and that special and general deterrence are still valid considerations in making the punishment fit the crime. Powell v. State of Texas, 1968, 392 U.S. 514, 88 S.Ct. 2145, 2153, 20 L.Ed.2d 1254.

Affirmed.