MADDOX, Justice.
This case presents an issue of first impression in Alabama: whether a juvenile, found to be a “serious juvenile offender,” pursuant to § 12-15-71.1, Ala.Code 1975, can receive credit for time served in a county detention facility pending adjudication of the delinquency charges lodged against him. We have considered the arguments made by the petitioner, and we conclude that a “serious juvenile offender” is not entitled to credit for time served in a detention facility pending an adjudication of charges. Therefore, we affirm the judgment of the Court of Criminal Appeals.
The facts are largely undisputed. The petitioner, S.F.R., was charged with delinquency because of his alleged participation in an assault in the first degree. The testimony at the delinquency hearing tended to show that S.F.R. and a group of his friends confronted the victim while he was walking through a housing subdivision in a town in east Alabama. S.F.R. was reported to have said something to the effect of “Don’t you know, you ain’t got [any right to be here], we done told you about coming through this pass right there.” As the victim tried to flee from S.F.R. and his group of friends, he was shot several times with both a pistol and a shotgun. The victim testified that S.F.R. had a pistol on his person at the time of the encounter.
S.F.R. voluntarily turned himself in at the police station after he learned that a warrant for his arrest was pending. The victim identified S.F.R. from a police photographic array.
On November 29, 1990, S.F.R. was charged with delinquency. The trial court held a detention hearing on November 30, 1990, determined that S.F.R. was a threat to both himself and society, and ordered him detained in the county youth detention facility pending further review. The delinquency hearing was held on January 17, 1991; on January 18, 1991, the trial court held a hearing on “serious juvenile offender” status.[1] Based on a finding of “serious juvenile offender” status, the trial court sentenced S.F.R. to one year in the custody of the Department of Youth Services.
S.F.R. appealed to the Court of Criminal Appeals, and that court affirmed the delinquency finding and sentence. That court discussed several issues, but most notably it addressed S.F.R.’s argument that serious juvenile offenders should be given credit for time served in detention pending adjudication of their delinquency status. The Court of Criminal Appeals held that § 12-15-71.1, Ala.Code 1975, mandated a sentence of one full year in the custody of the Department of Youth Services (and not jointly between a county detention center and DYS) for a serious juvenile offender. The court reasoned that § 15-18-5, Ala.Code 1975, applied only to adult offenders. The petitioner asked this Court to review his claim, and this Court granted the writ of certiorari to examine this issue of credit for time served.[2]
*1008 We find three reasons for rejecting S.F.R.'s contention that credit for time served under § 15-18-5, Ala.Code 1975, should be afforded “serious juvenile offenders.” [3] First, for this Court to hold that serious juvenile offenders must receive credit for time served would undercut the very purposes and stated goals of the Juvenile Justice Act. The purposes of the Juvenile Justice Act are “to facilitate the care, protection and discipline of children who come within the jurisdiction of the juvenile court, while acknowledging the responsibility of the juvenile court to preserve the public peace and security.” Section 12-15-1.1, Ala.Code 1975. Additionally, a stated goal of the Juvenile Justice Act is:
“To hold a child found to be delinquent accountable for his or her actions to the extent of the child’s age, education, mental and physical condition, background and all other relevant factors and to provide a program of supervision, care, and rehabilitation, including rehabilitative restitution by the child to the victim of his delinquent acts to the extent that the child is reasonably able to do so.”
§ 12-15-1.1(7), Ala.Code 1975.
Clearly, the intent of the Juvenile Justice Act is not punitive but rehabilitative. For this Court to hold that a serious juvenile offender must receive credit for time spent in pre-adjudication detention would be to dictate to the Department of Youth Services when rehabilitation is achieved. Also, such a holding would undermine the juvenile court’s ability “to preserve the public peace and security” by forcing a release of a youth who, in the professional opinion of DYS officials, might not be fully rehabilitated.
*1009 Second, the implication of § 15-18-5, Ala.Code 1975, is that it applies to adults only. Section 15-18-5, Ala.Code 1975, states:
“Upon conviction and imprisonment for any felony or misdemeanor, the sentencing court shall order that the convicted person be credited with all of his actual time spent incarcerated pending trial for such offense. The actual time spent incarcerated pending trial shall be certified by the circuit clerk or district clerk on forms to be prescribed by the board of corrections.”
(Emphasis supplied).
Clearly, § 15-18-5 can apply only to persons who can be “convicted” of a crime. Section 12-15-72(a), Ala.Code 1975, clearly states that “[a]n order of disposition or other adjudication in proceedings under [the Juvenile Justice Act] shall not be considered to be a conviction.” (Emphasis supplied.) Additionally, this state’s case law has held that an adjudication of delinquency is not to be considered a “conviction.” See, e.g., Burttram v. State, 448 So.2d 497 (Ala.Crim.App.1984). Thus, if a juvenile cannot be “convicted” of a crime he cannot be entitled to credit for time served under § 15-18-5.
Third, and most persuasively, the explicit language of § 12-15-71.1(b) and (d) militate against granting credit for time served to serious juvenile offenders. Section 12-15-71.1(b) states that “A child found to be a serious juvenile offender shall be committed to the custody of the Alabama department of youth services, where he shall remain for a minimum of one year.” (Emphasis supplied.) Section 12-15-71.1(d) states:
“The Alabama department of youth services shall maintain and staff a separate, secure facility and implement programs for serious juvenile offenders. The minimum one year term required by this section shall be served at said facility and the review panel may extend the period of confinement in said facility as determined necessary.”
(Emphasis supplied).
Thus, the obvious mandate of the “serious juvenile offender” statute itself is that a juvenile found to be a serious threat to either himself or society must be confined for one full year at the DYS facility established for such juveniles. To give serious juvenile offenders credit for time served in county detention facilities would contradict the clear mandate of the statute.
Based on the foregoing, we affirm the judgment of the Court of Criminal Appeals holding that a “serious juvenile offender” is not entitled to credit for time served in pre-adjudication detention.
AFFIRMED.
HORNSBY, C.J., and SHORES, ADAMS, STEAGALL, KENNEDY and INGRAM, JJ., concur.

. Section 12-15-71.1(a) states:
"(a) The juvenile court may find a child to be a serious juvenile offender if:
"(1) The child is adjudicated delinquent and the delinquent act or acts charged in the petition would constitute any of the following if committed by an adult:
“a. Class A felony;
"b. A felony resulting in serious physical injury [as defined in section 13A-l-2(9) ];
"c. A felony involving physical force [section 13A-1-2(10) ], or a deadly weapon [section 13-A-1-2(11) ], or a dangerous instrument [section 13 — A—1—2(12) ]; or
"(2) The child has been adjudicated delinquent for an act which would constitute a Class A or B felony or burglary in the third degree involving a residence and the child has previously been adjudicated delinquent of two previous acts which would have been a Class A or B felony or burglary in the third degree involving a residence if such acts had been committed by an adult."

. While we note that the United States Supreme Court has extended to juveniles many of the same procedural rights enjoyed by adults [see, e.g., In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 *1008 L.Ed.2d 527 (1967) (declaring that juveniles have the right to counsel, the privilege against self incrimination, the right to notice of charges, and the right to confrontation and cross-examination): In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (declaring that the requirement of proof “beyond a reasonable doubt” applies to juvenile cases); and Breed v. Jones, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975) (declaring that double jeopardy principles apply to juveniles) ], we also note that the Court has not addressed the issue of whether credit for time served for pre-adjudication detention is required as a matter of federal constitutional law. We believe that such an extension is unlikely, (see, footnote 3, infra), especially in light of such cases as McKeiver v. Pennsylvania, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971) (holding that juveniles are not entitled to jury trials), and Schall v. Martin, 467 U.S. 253, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984) (holding that pre-adjudication detention of a juvenile, such as that at issue here, is not a denial of due process of law).

. Some mention must be made of the Washington case of In re the Matter of Trambitas, 96 Wash.2d 329, 635 P.2d 122 (1981), which S.F.R. relies upon heavily. In Trambitas the Washington Supreme Court held that credit for time served pending adjudication had to be given to juveniles in Washington. The court held that to deny that credit would violate federal constitutional rights to substantive due process and equal protection. We find the analysis in Tram-bitas unconvincing.
First, the Trambitas court’s holding as to substantive due process was based solely upon a finding of a "fundamental right" to pre-adjudication credit. However, the court failed to cite any federal authority for this proposition, nor has the petitioner cited us to any federal authority that would support such a finding. In the absence of any binding federal authority holding that credit for time served for juveniles is a "fundamental right," merely a rational relationship between the legitimate state interest served by the “serious juvenile offender" statute and the means used to serve that end need be shown. See, 2 R. Rotunda, X Nowak, X Young, Treatise on Constitutional Law: Substance and Procedure § 15.4 at 59 (1986 & 1991 Supp.). We have no doubt that our decision today will withstand the minimal federal constitutional scrutiny applicable to it absent a finding of a "fundamental right.”
Second, the Trambitas court’s finding as to equal protection hinged on the specifics of the Washington juvenile statute. That statute specifically provided that some juveniles were eligible for credit for time served, but not all juveniles. The court found that this disparate treatment violated the equal protection clause of the federal Constitution. We are not certain that the Washington court’s analysis is correct, because we find no “suspect” or “quasi-suspect” classification, and, again, no "fundamental right.” See, id. at § 18.3, p. 324-25. Indeed, assuming the Washington court’s analysis to be correct would argue against giving serious juvenile offenders credit for pre-adjudication time served. Under the Trambitas court’s reasoning, the very act of giving serious juvenile offenders credit for time served, and not giving other juvenile offenders this same opportunity, would amount to disparate treatment violative of the right to equal protection.
We find the Trambitas case unpersuasive.