678 So.2d 1041 (1995)
Ex parte R.E.C.
(Re R.E.C. v. State).
1930922.
Supreme Court of Alabama.
September 22, 1995.
Michael A. Dasinger III of Hoiles & Dasinger, P.C., Robertsdale, for Petitioner.
Jeff Sessions, Atty. Gen., and Cedric B. Colvin, Deputy Atty. Gen. for Respondent.
Edwin L. Yates and Robert D. Drummond, Jr., Montgomery, for Amicus Curiae A.W.
William J. Samford II, Mt. Meigs, for Amicus Curiae Department of Youth Services.
COOK, Justice.
In this case of first impression, we issued a writ of certiorari to the Alabama Court of Criminal Appeals to review that court's judgment (by unpublished memorandum) affirming an order of the Juvenile Court of Baldwin County committing R.E.C. to the Alabama Department of Youth Services until a date certain. R.E.C. v. State, 655 So.2d 62 (Ala. Cr.App.1994) (table). We reverse and remand.
Several delinquency petitions were filed against R.E.C. in the Baldwin County Juvenile Court, charging him with (1) reckless endangerment, (2) second-degree assault, (3) attempting to elude a police officer, (4) firstdegree criminal mischief, (5) reckless driving, and (6) unauthorized use of a motor vehicle. On June 9, 1993, a trial was conducted on the charge of unauthorized use of a motor vehicle, the juvenile having previously admitted all other charges. At the conclusion of that trial, the trial judge adjudicated R.E.C. to be delinquent and stated:
"I'm going to commit him to the Alabama Department of Youth Services. He is subject to `serious juvenile offender' adjudication. I'm not going to adjudicate him as a serious juvenile offender, but I'm going to order that he not be released prior to March 23, 1994. In the event that they do disregard this court's order and release him prior to that date, he will be returned to the Baldwin County Juvenile Detention Facility.
". . . .
"That's his birthday. He will be 18."
The Court of Criminal Appeals affirmed the adjudication and approved the term of *1042 commitment. After we granted R.E.C.'s petition for certiorari review of the judgment of the Court of Criminal Appeals, additional briefs were filed by two amici curiae, including the Alabama Department of Youth Services ("DYS"); DYS requested oral argument. The other amicus was A.W., a plaintiff-representative in a class action in the United States District Court for the Middle District of Alabama, in which the plaintiffs sought to remedy alleged deficiencies in DYS's "statutorily] required" provision of "rehabilitative ... care, services, safety, and facilities." Brief of Amicus Curiae A.W., at 4. Subsequently, the parties and the amici presented oral arguments.
R.E.C. contends that the juvenile court had no authority to commit him for a term certain. The parties concede that the resolution of this issue turns on the construction of specific statutory provisions, including the Alabama Juvenile Justice Act, Ala.Code 1975, §§ 12-15-1 to -176 (the "Act"). Particularly applicable is § 12-15-71, which provides in pertinent part:
"(c) If a child is found to be delinquent or in need of supervision, the court may make any of the following orders or dispositions for the child's supervision, care, and rehabilitation:
"(1) Permit the child to remain with the child's parents, guardian, or other custodian, subject to the conditions and limitations the court may prescribe;
"(2) Place the child on probation under conditions and limitations the court may prescribe;
"(3) Transfer legal custody to any of the following: "a. The Department of Youth Services, with or without a commitment order to a specific institution;
". . . .
"(4) Make any other order as the court in its discretion shall deem to be for the welfare and best interests of the child, including random drug screens, assessment of fines not to exceed $250, and restitution against the parent, guardian, or child, as the court deems appropriate....
"(5) Direct the parent or custodian of the child to perform such reasonable acts as are deemed necessary to promote the best interest of the child."
The State contends that § 12-15-71(c)(4), which authorizes the juvenile court to issue "any other order as the court in its discretion shall deem to be for the welfare and best interests of the child" (emphasis added), confers upon the juvenile court discretionary power to order a determinate commitment. R.E.C. construes § 12-15-71(c)(4) more narrowly than does the State. He contends that in the case of a juvenile adjudicated delinquent this provision and similar provisions do not confer on the juvenile court the authority to commit the juvenile for a time that is definite and stated in the committing order; he contends that, to make such an order, the court must make an adjudication finding the juvenile to be a "serious juvenile offender."[1] He bases his contention on the argument that a determinate commitment (1) violates the purpose of the Juvenile Justice Act and (2) impinges upon the discretion of DYS. We shall address those contentions in Parts I and II, respectively.

I.
Drawing a distinction between "punishment" and "rehabilitation," R.E.C. contends that the focus of the Act is rehabilitative, not retributive, and that a determinative commitment like the one ordered in his case is "essentially a punitive sentence," which, he insists, with the exception of the sections specifically applicable to "serious juvenile offenders," the Act "[does] not authorize." Brief and Argument in Support of Petition for Writ of Certiorari, at 14. The State, by contrast, construes § 12-15-71(c)(4) broadly enough to authorize the juvenile court to "provide for some measure of punishment in fashioning its [commitment] order."
In our view, R.E.C. places too much emphasis on the distinction he perceives between "rehabilitation" and "punishment." To be sure, this Court has, as R.E.C. points out, *1043 stated that "the intent of the Juvenile Justice Act is not punitive but rehabilitative." Ex parte S.F.R., 598 So.2d 1006, 1008 (Ala.1992). However, that case does not stand for the proposition that a determinate sentence is inimical to the concept of rehabilitation. On the contrary, the issue in that case was whether a serious juvenile offender, having received a mandatory one-year term of commitment, was entitled to credit for time spent in precommitment detention. Id. at 1007. Thus, Ex parte S.F.R. was decided within the context of a determinate commitment.
We agree that the Act aims to rehabilitate, but we assign particular significance to its two-fold statement of purpose, one of which "is to facilitate the care, protection and discipline of children who come within the jurisdiction of the juvenile court." Section 12-15-1.1 (emphasis added). "`Discipline' (as a noun) signifies `punishment; ... retribution for an offense, especially in a subordinate;... control gained by enforcing obedience or order.' As a verb, it means `to chastise, to impose a penalty upon.'" Federal Labor Union 23393, American Federation of Labor v. American Can Co., 28 N.J.Super. 306, 100 A.2d 693, 695 (1953) (quoting Webster's New International Dictionary (2d ed.)). Moreover, rehabilitation is one of the goals of punishment. Williams v. State, 420 So.2d 91 (Ala.Crim.App.1982) (quoting Castle v. United States, 399 F.2d 642, 652 (5th Cir.1968)). To effectuate this goal, the legislature expressly authorized the juvenile court "[t]o hold a child found to be delinquent accountable for his or her actions to the extent of the child's age, ... background and all other relevant factors and to provide a program of supervision, care, and rehabilitation, including rehabilitative restitution by the child to the victim of [the child's] delinquent acts." Section 12-15-1.1((7) (emphasis added). Indeed, the Act uses such "rehabilitative" terms virtually interchangeably with "punitive" or "disciplinary" terms. We conclude, therefore, that the legislature did not intend to restrict the juvenile court exclusively to courses of action devoid of an arguably punitive flavor.

II.
R.E.C. also contends that a determinate commitment impinges upon the prerogative of DYS to decide when rehabilitation has been achieved. In particular, he cites Ala. Code 1975, § 44-1-36(c), which provides: "A committed youth shall be discharged who, in the judgment of the director [of DYS], has gained optimal rehabilitation from the programs of the department and will not be received again by the department under the original commitment order." We agree that the Juvenile Justice Act cannot be construed without reference to § 44-1-36(c) and the rest of Title 44, Chapter One. See Locke v. Wheat, 350 So.2d 451, 453 (Ala.1977) ("Sections of the Code dealing with the same subject matter are in pari materia"). However, even a cursory reading of Title 44, Chapter One, compels the conclusion that the legislature intended DYS and the juvenile court to operate in coordination and concert.
For example, the purpose of Title 44, Chapter Onethe chapter creating DYSis "to promote and safeguard the social wellbeing and general welfare of the youth of the state through a comprehensive and coordinated program of public services for the prevention of juvenile delinquency and the rehabilitation of delinquent youth." Section 44-1-1 (emphasis added). One of the means by which the legislature sought to achieve its declared purpose was the development of "[s]ocial and educational services and facilities for any youth whom a juvenile judge deems in need of such state services." Section 44-1-1(1) (emphasis added). See, e.g., § 44-1-1(5) (a goal of Chapter One is "[t]he promotion of improved communications between the ... agencies and bodies of this state responsible for said youth and the juvenile courts"); § 44-1-30 (requiring DYS to investigate and evaluate each youth committed by the juvenile court to its custody and "make available its findings ... to any juvenile court in the state"); § 44-1-32 (requiring DYS to apprise the "committing court... of the physical location of the youth at all times"); § 44-1-33(a) (requiring DYS to obtain approval for "major surgery or medical treatment" from the youth's parent or guardian or, if such approval cannot be acquired, *1044 from the juvenile court); § 44-1-34 (requiring DYS to submit "at least every nine months" to the committing court a "written report," based on a review of "all pertinent circumstances of [the] personal and family situation [of each committed youth]," such review to "be for the purpose of determining whether existing decisions, orders and dispositions in his case should be modified or continued in force").
Particularly pertinent in this regard are various provisions in § 44-1-36. Pursuant to § 44-1-36(d), for example, "[a] committed youth shall be released into aftercare when [DYS] determines that said youth is no longer in need of the services of the state training schools and can function ... under the supervision of a probation officer in accordance with terms and conditions as established by the committing court." Pursuant to § 44-1-36(g)subject to specific procedural restrictionsthe juvenile court has "jurisdiction until the youth reaches his twenty-first birthday to issue an extension of its original commitment order." (Emphasis added.)
We cite these provisions, of course, primarily as illustrating a principle, namely, that the juvenile court's direct, ongoing participation in the rehabilitation of a delinquent juvenile does not necessarily conflict with the statutory scheme or infringe upon the prerogative of DYS. In fact, the State and both amici agree with this principle.
Significant also in this connection is the second prong of the stated purpose of the Juvenile Justice Act, which recognizes that it is "the responsibility of the juvenile court to preserve the public peace and security." Section 12-15-1.1 (emphasis added). No one in this case contends that the juvenile court's authority to order a determinate commitment would not facilitate this goal. Logic and experience suggest that such authority would, indeed, promote public safety.
Finally, the Act contains other intrinsic evidence that is, perhaps, most important to the proper construction of the scope of the juvenile court's discretion. Section 12-15-1.1 provides: "This chapter shall be liberally construed to the end that each child coming within the jurisdiction of the juvenile court shall receive such care, guidance and control... necessary for the child's welfare and the best interest of the state." R.E.C.'s restrictive view of the juvenile court's role vis-a-vis that of DYS is a result of his narrow construction of the Act, and that view is inconsistent with this legislative directive.
Consistent with this directive, however, is a construction of the Actand § 12-15-71(c) in particularthat vests the juvenile court with broad discretion in the exercise of its continuing jurisdiction[2] of juveniles adjudicated delinquent. Thus, we conclude that, provided certain criteria are met, a determinate commitment is appropriately rehabilitative within the context of the Juvenile Justice Act, even if the juvenile has not been adjudicated a "serious juvenile offender." For the following reasons, however, we conclude that those criteria were not met in this case.
During oral argument, R.E.C. and amicus A.W. explained that upon commitment to DYS every juvenile is assigned an "individual service plan" (the "Plan"). The Plan is based on a study and evaluation of "all pertinent circumstances of [the juvenile's] behavior and life." Section 44-1-30. A.W. contends that a determinate commitment would involve no statutory difficulty if the commitment is based on specific findings of fact and orders that are intended to, and that do, become integrated into the Plan itself. As he phrases it: "That statement of determination of time [would] then become[ ] part of the child's ... Plan." Similarly, amicus DYS orally argued: "It could help DYS for the juvenile judge to share in the responsibility to determine the method and length of treatment that the child should have."
We agree with these propositions. Indeed, as a logical matter, few, if any, of the "circumstances of [the juvenile's] behavior" are more "pertinent" to the formulation of the Plan than the circumstances out of which the delinquency adjudication arose. Few, if any, *1045 of the state officials responsible for the juvenile's rehabilitation are better situated to make findings of fact regarding those circumstances than the juvenile court judge. We conclude, therefore, that an order of commitment for a definite period does not offend the Act, even though the juvenile has not been adjudicated a serious juvenile offender, provided that the order is accompanied by specific findings of fact and a reasoned analysis as to how the determinate period is calculated to benefit the juvenile or to further his or her rehabilitation; and provided, further, that the court's intent to incorporate its order into the Plan plainly appears in the order.
It is undisputed, however, that these procedures were not followed in this case. Here, the "order" contains no factual findings and no rationale or conclusions relating to how the specific commitment period would benefit R.E.C. or further his rehabilitation. Certainly, the order was not intended to become part of R.E.C.'s Plan, and, in fact, it contained nothing that would be of particular benefit to DYS. As to this case, therefore, the amici agree with R.E.C.as do wethat the determinate commitment imposed was outside the juvenile court's statutory authority. For these reasons, the judgment of the Court of Criminal Appeals is reversed, and the cause is remanded.
REVERSED AND REMANDED.
HORNSBY, C.J, and MADDOX, KENNEDY, and INGRAM, JJ, concur.
NOTES
[1] A minimum commitment period of one year is, pursuant to § 12-15-71.1 (a) and (b), required upon the juvenile court's determination that the defendant minor is "a serious juvenile offender."
[2] Ala.Code 1975, § 12-15-32(a), provides: "For the purposes of this chapter, jurisdiction obtained by the court in the case of a child shall be retained by it until the child becomes 21 years of age unless terminated prior thereto by order of the judge of the juvenile court."