**Glenn E. HINDT, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted Dec. 14, 1979.

Decided Sept. 15, 1980.

Joseph A. Hurley, of Paul & Hurley, Wilmington, for defendant below, appellant.

Robert R. Thompson, Deputy Atty. Gen., Dover, for plaintiff below, appellee.

Before HERRMANN, C. J., QUILLEN and HORSEY, JJ.

HERRMANN, Chief Justice.

In this appeal we are asked to reverse defendant's conviction under 7 *Del.C.* § 6013(a)[1] of the Water and Air Resources Act because: (1) prejudicial error was committed by the Trial Court when it allowed a witness for the prosecution to give an opinion regarding the ultimate fact to be decided by the jury; (2) the jury rendered inconsistent verdicts; (3) the defendant was denied due process in his conviction; (4) the

State failed to prove each element of the crime beyond a reasonable doubt; (5) the Act was applied to the defendant in an *ex post facto* manner; (6) the Act constitutes an unconstitutional delegation of power by the Legislature; and (7) the sentence imposed was cruel and unusual punishment under the Eighth Amendment.

I.

In 1971, the defendant, Glenn E. Hindt, a contractor, was issued a permit by the Department of Natural Resources and Environmental Control (Department) for the construction and operation of a sewage treatment system designed to service several lots of land that he was developing. Later, in 1972, he applied for the permission of the Department to extend the system to other adjacent lots which he had begun to develop. The sewage treatment system was comprised of individual treatment units each of which was connected to a central sewer pipe. This pipe dumped the treated sewage into a nearby stream.

In 1974, the defendant was notified by representatives of the Department that the federal law concerning the discharge of pollutants into surface water had changed and that he would have to apply for a new and different permit, a National Pollutant Discharge Elimination System permit (NPDES permit). In 1975, the defendant applied for the NPDES permit and, pursuant to federal regulation, was issued both a draft permit and, subsequently, a final permit. The final permit contained, *inter alia*, a list of effluent limitations, a compliance schedule, and a schedule for the submission of monitoring reports. The defendant admits that at no time did he comply with any of the standards of schedules contained in the per-

---

1. 7 *Del.C.* § 6013(a) states:
 "§ 6013. Criminal penalties.
 "(a) Any person who wilfully or negligently (1) violates § 6003 of this title, or violates any condition or limitation included in a permit issued pursuant to § 6003 of this title, or any variance condition or limitation, or any rule or regulation, or any order of the Secretary, or (2) violates any requirements of a statute or regulation respecting monitoring, recording and re-

porting of a pollutant or air contaminant discharge; or (3) violates a pretreatment standard or toxic effluent standard with respect to introductions of pollutants into publicly owned treatment works shall be punished by a fine of not less than $2,500 nor more than $25,000 for each day of such violation. The Superior Court shall have jurisdiction of offenses under this subsection."

mit despite numerous letters from the Department. The only action taken by him concerning the permit was the mailing of a letter to a Department attorney outlining the steps taken to comply with the permit.

The defendant was arrested in 1977 and charged with two counts of failure to submit a written report required by the permit in violation of § 6013(a); one count of failure to file for the reissuance of a permit pursuant to § 6013(a); one count of failure to comply with discharge regulations in violation of § 6013(a); one count of failure to comply with an order of the Secretary of the Department contrary to § 6013(a); and one count of discharging a pollutant without a permit in violation of 7 *Del.C.* § 6003(a)(2).[2] The defendant was indicted and a first trial was held in which guilty verdicts were returned by the jury on all six counts. The defendant's motion for new trial, however, was granted. In the second trial, at the close of the State's case, the Trial Court dismissed the charge of failure to comply with the discharge regulations. The second jury returned not guilty verdicts on the charges of failure to file for a reissuance of a permit pursuant to permit requirements and discharging without a permit; it returned verdicts of guilty on the two counts of failure to file written reports as required by the permit; and no verdict was returned, because a unanimous verdict could not be reached, on the charge of failure to comply with an order of the Secretary of the Department, thus causing the Trial Judge to declare a mistrial on that count.

The defendant filed a motion for judgment of acquittal notwithstanding the verdict; this was denied by the Trial Court. On the conviction on one count of failure to file written reports, the defendant was fined $45,000, and on the other count $7,500, a total of $52,500. The major portion of the fines, $50,500, was suspended, however, on the condition that the defendant make ar-

rangements, within 90 days of the imposition of sentence, to provide a sewage treatment system complying with federal and state regulations. Defendant promptly appealed to this Court within 30 days of the imposition of the sentence.

## II.

First, as to the contention that reversible error was committed by the Trial Court in allowing certain testimony to be admitted into evidence: The testimony complained of was elicited during direct examination of a witness for the prosecution, William F. Moyer, an engineer with the Department, as follows:

"Q. From your understanding, from your point of view, did the defendant appear to understand his obligations? (Objection by defense counsel)

"Q. In your conversation or meeting with Mr. Hindt, did he indicate he did not understand?

"A. No, he did not.

 \* \* \* \* \* \*

"Q. To your knowledge, did Mr. Hindt violate his NPDES permit?

"A. Yes, he did."

Defendant complains that this testimony constitutes impermissible opinion testimony because it strikes to the heart of the matter to be decided by the jury. We disagree.

The portion of testimony in question concerning the defendant's understanding is clearly unobjectionable. The witness merely testified that the defendant made no discernible manifestations indicating a lack of understanding. This is clearly different from the situation in which a witness attempts to infer conclusions from such objective factors. See Delaware Uniform Rules of Evidence 701; *John Hancock Mutual Life Insurance Co. v. Dutton,* 5 Cir., 585 F.2d 1289, 1294 (1978).

 \* \* \* \* \* \*

---

**2.** 7 *Del.C.* § 6003(a)(2) states:

"§ 6003. Permit–Required.

"(a) No person shall, without first having obtained a permit from the Secretary, undertake any activity:

"(2) In a way which may cause or contribute to discharge of a pollutant into any surface or ground water; \* \* \*."

Moreover, if any error exits in the latter portion of the testimony in which Mr. Moyer stated that the defendant had violated his permit, we find it is harmless error. The defendant's argument, both in the Trial Court and here on appeal, has never centered on his compliance with the permit requirements; indeed, he has admitted that he never complied with the permit requirements. Rather, his defense has been that the responsibility for pollution caused by the sewage treatment system resides with the homeowners in the development serviced by the system, not with him. Thus, any improper inferences drawn by the jury from the testimony in question constitutes harmless error.

### III.

As to the contention that the combined verdicts rendered by the jury were impermissibly inconsistent, we cannot agree. As the Trial Court so ably determined, the verdicts can be logically reconciled. It is reasonable to assume that the not–guilty verdicts rendered on the charges of (1) failure to file for reissuance of a permit pursuant to permit requirements under § 6013(a), and (2) discharging without a permit under § 6003(a)(2), as well as the jury's inability to agree on the charge of failure to comply with an order of the Secretary of the Department, were arrived at because the jury, or various members thereof, determined that defendant was not a "discharger" within the meaning of Act, or as required by Order of the Secretary and the relevant portions of the permit. The portions of the permit requiring that monthly reports be made do not contain such a requirement. Thus, the jury may have found that while the defendant was not a "discharger," he was responsible, as holder of the permit, for making the required monthly reports. Therefore we can find no impermissible inconsistency. See *Kreisher v. State*, Del.Supr., 319 A.2d 31, 33

(1974); *Wilson v. State*, Del.Supr., 305 A.2d 312, 317 (1973).

### IV.

Next, the defendant contends that his rights to Due Process guaranteed under the Fourteenth Amendment were violated. He argues (1) that the draft permit issued to him was lacking critical information, such as the dates on which the monitoring reports were due, and thus he could not be prosecuted for failure to comply because it did not sufficiently apprise him of what action or lack thereof would constitute unlawful conduct; and (2) that the portion of the Act defining a pollutant, 7 *Del.C.* § 6002(16),[3] is also unconstitutionally vague, again preventing appraisal of the dividing line between lawful and unlawful conduct. We are unpersuaded.

The existence of any vagueness in the terms of the draft permit cannot be the foundation for a reversal of a conviction on due process grounds for failure to comply with the permit, since the only conduct which can be punished is that which fails to comply with the requirements of the *final* permit. See 40 C.F.R. § 124–61(c) (1979). Because the defendant was prosecuted for failure to comply with certain terms of the final permit, the existence of some vagueness in the draft permit is irrelevant.

And we find that the defendant lacks standing to assert the unconstitutionality of the portion of the Act defining a pollutant. In *Wilson v. State*, Del.Supr., 264 A.2d 510, 511 (1970) this Court stated:

"Before considering these contentions, we must observe that defendant has stated his grounds in terms too broad. The constitutionality of a statute is considered in the light of the standing of the party who seeks to raise the question and of its particular application. It is an established principle of law that one may not

---

3. 7 *Del.C.* § 6002(16) provides:

"§ 6002. Definitions.

\* \* \* \* \* \*

"(16) 'Pollutant' means dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt, and industrial, municipal and agricultural waste discharged into water."

urge the unconstitutionality of a statute if he is not harmfully affected by the particular feature of the statute alleged to be in conflict with the Constitution." *Barrows v. Jackson*, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586.

*Accord, McCarthy v. State*, Del.Supr., 372 A.2d 180 (1977).

The purpose of the Act is, *inter alia*, to protect the land, water, underwater and air resources "from pollution in the interest of the health and safety of the public." 7 *Del.C.* § 6001(a)(5). The intent of the Statute is to make those who create or contribute to the pollution problem responsible for its correction. If a party voluntarily accepts that responsibility, but later either is able to shift that responsibility to another party or correctly determines that such responsibility never existed and, nevertheless, fails to inform the Department or initiate the administrative process to shift such responsibility, we believe it to be the intent of the Act that such parties be held to compliance with the terms of the permit. Otherwise, the purposes of the Act are thwarted.

Here, the defendant was convicted of failure to submit monthly reports as specifically required by the final permit for which he voluntarily applied. Thus, in this case, the issue of vagueness in the definition of a "pollutant" under § 6002(16) is irrelevant as a defense in this case.

### V.

■ The defendant also contends that the State failed to carry its burden of proving every element of the crime as required by 11 *Del.C.* § 301.[4] He argues that the State failed to prove a necessary element of the charges of failure to submit reports required by the permit under § 6013; viz., that the permit–holder has "cause[d] or contribute[d] to the discharge of a pollutant into any surface or ground water" under § 6003(a)(2). As we noted earlier, however,

there is no specific requirement that the party charged with failing to make monthly reports be a "discharger" within § 6003(a)(2). Here the State proved that defendant voluntarily applied for a permit and the Secretary, pursuant to his power under § 6003, issued him one. The permit required monthly reports from the permit–holder, which defendant failed to supply. Thus the State has met its burden.

### VI.

■ It is next argued that the provisions of the Water and Air Resources Act were applied to defendant in an *ex post facto* manner. The hallmark of an *ex post facto* law is as follows:

"It is settled, by decisions of this Court so well known that their citation may be dispensed with, that any statute which punishes as a crime an act previously committed, which was innocent when done, which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as *ex post facto*."

*Dobbert v. Florida*, 432 U.S. 282, 292, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344, 356 (1977), quoting *Beazell v. Ohio*, 269 U.S. 167, 169–170, 46 S.Ct. 68, 68, 70 L.Ed. 216, 217 (1925).

The defendant contends that the imposition by the Act of higher standards with increased penalties constitutes an *ex post facto* application because it subjects the defendant to punishment for conduct which, under the prior statute, was not unlawful, and does so through enhanced punishments.

■ We cannot agree. The offense being punished here, i. e., failure to submit written reports, was committed subsequent to the passage of the new Act and in violation of a permit that the defendant had requested pursuant to the new Act. Thus,

---

4. 11 *Del.C.* § 301 provides:

"§ 301. *State's prima facie case; proof beyond reasonable doubt.*

"(a) In any prosecution for an offense, a prima facie case for the State consists of some

credible evidence tending to prove the existence of each element of the offense.

"(b) No person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt."

we are unable to find any *ex post facto* constitutional violation.

## VII.

As to the contention that the Water and Air Resources Act unconstitutionally delegates too much authority to the Secretary of the Department: It is argued that the Statute grants to the Secretary unbridled discretion to grant permits and, therefore, constitutes a constitutionally infirm delegation of power by the Legislature. We disagree.

In *Atlantis I Condominium Ass'n. v. Bryson*, Del.Supr., 403 A.2d 711, 713 (1979), this Court stated:

"The test for determining the validity of a legislative delegation was stated concisely in *State v. Durham*, Del.Super., 191 A.2d 646 (1963):

'Generally, a statute or ordinance vesting discretion in administrative officials without fixing any adequate standards for their guidance is an unconstitutional delegation of legislative power. But a qualification to that rule is that where the discretion to be exercised relates to police regulation for the protection of public morals, health, safety, or general welfare, and it is impracticable, to fix standards without destroying the flexibility necessary to enable the administrative officials to carry out the legislative will, the legislation delegating such discretion without such restrictions may be valid. Adequate safeguards and standards to guide discretion must be found in or be inferable from the statute, but the standards need not be minutely detailed, and the whole ordinance may be looked into in light of its surroundings and objectives for purposes of deciding whether there are standards and if they are sufficient.' 191 A.2d, at 649–650 (emphasis added); accord, *State v. Braun*, Del.Super., 378 A.2d 640 (1977).

\* \* \* \* \* \*

"Where it is not feasible for the General Assembly to supply precise statutory standards without frustrating the purposes of the legislation, the presence of procedural safeguards may compensate substantially for the lack of precise statutory standards. *State v. Boynton*, Me. Supr., 379 A.2d 994 (1977). The preciseness of the statutory standards will vary with both the complexity of the area at which the legislation is directed and the susceptibility to change of the area in question. *State Conservation Department v. Seaman*, Mich.Supr., 396 Mich. 299, 240 N.W.2d 206, 210 (1976); *United States v. Gordon*, 5 Cir., 580 F.2d 827, 839 (1978); cf. *Durham, supra*, at 650."

■ As with the Beach Preservation Act of 1972, under consideration in *Atlantis*, we find that the Water and Air Resources Act is one in which a legislative "attempt to fix the standards would impair the flexibility required to enable the administrative officials to carry out the basic legislative policy. ... [T]he General Assembly was aware of the difficulties in attempting to legislate the specifics of a coordinated ... plan, and instead, chose to defer to the expertise of the [Department] ... " in the area of pollution control. *Accord, State v. Braun*, Del. Super., 378 A.2d 640 (1977). Thus, we must look to the procedural safeguards available in the Act to test the adequacy of the delegation of power to the Department.

In *State v. Braun, supra*, it was found that the procedural safeguards provided in the Water and Air Resources Act were sufficient to withstand the contention that an unconstitutional delegation of power had occurred. We agree. When application is first made to the Secretary for a permit, members of the public at large are given the right to request a public hearing to discuss the application. 7 *Del.C.* § 6004.[5] Any person "whose interest is substantially affected by any action of the Secretary"

5. 7 *Del.C.* § 6004 provides:
"§ 6004. Same–Application; hearing.
"(a) Any person desiring to obtain a permit required by § 6003 of this title or a variance shall submit an application therefor in such form and accompanied by such plans, specifications, and other information as required by applicable statute or regulation.
"(b) Upon receipt of an application in proper form (except an application concerning a

has the right of appeal to the Environmental Appeals Board. Whenever this appeal concerns the decision of the Secretary regarding a permit, the Board is required to hold a public hearing. 7 *Del.C.* § 6008(a), (b).[6] An appeal process to the Superior Court is also provided for any "person or persons jointly or severally, or any taxpayer, or any officer, department, board or bureau of the State, aggrieved by any decision of the Board." 7 *Del.C.* § 6009(a).[7] In addition, a variance from any rule or regulation promulgated by the Secretary may be obtained upon the showing of certain specified conditions. 7 *Del.C.* § 6011(b),[8] § 6012(b).[9]

These safeguards provide a sufficient deterrent and remedy to protect against arbitrary action by the Secretary. We therefore discern no constitutional infirmity on the ground of invalid delegation of legislative authority.

---

source of water or a sewerage system for 3 or fewer families or open burning, on which the Secretary may act without public notification), the Secretary shall advertise in a newspaper of general circulation in the county in which the activity is proposed and in a daily newspaper of general circulation throughout the State (1) the fact that the application has been received, (2) a brief description of the nature of the application, and (3) the place at which a copy of the application may be inspected. The Secretary may not hold a public hearing on the application unless he receives, within a reasonable time stated in the advertisement, a public hearing request which he deems meritorious. Such notice shall also be sent by mail to any person who has requested such notification from the Department by providing the name and mailing address. The reasonable time stated shall be 15 days, unless federal law requires a longer time, in which case the longer time shall be stated. A public hearing request shall be deemed meritorious if it exhibits a familiarity with the application and a reasoned statement of the permit's probable impact.

**6.** 7 *Del.C.* § 6008(a), (b) states:
"§ 6008. Appeal to Board.
"(a) Any person whose interest is substantially affected by any action of the Secretary may appeal to the Environmental Appeals Board within 20 days after the Secretary has announced the decision. The Board may affirm, modify or reverse the decision of the Secretary.
"(b) Whenever a decision of the Secretary concerning a permit is appealed, the Board shall hold a public hearing in accordance with § 6006."

**7.** 7 *Del.C.* § 6009(a) provides:
"§ 6009. Appeal from Board's decision.
"(a) Any person or persons, jointly or severally, or any taxpayer, or any officer, department, board or bureau of the State, aggrieved by any decision of the Board, may appeal to the Superior Court in and for the county in which the activity in question is wholly or principally located by filing a petition, duly verified, setting forth that such decision is illegal, in whole or in part, specifying the grounds of the illegality. Any such appeal shall be perfected within 30 days of the decision of the Board."

**8.** 7 *Del.C.* § 6011(b) provides:
"§ 6011. Variance.
\* \* \* \* \* \*
"(b) The variance may be granted if the Secretary finds that:
"(1) Good faith efforts have been made to comply with the provisions of this chapter;
"(2) The person applying is unable to comply with the provisions of this chapter because the necessary technology or other alternative methods of control are not available or have not been available for a sufficient period of time or the financial cost of compliance by using available technology is disproportionately high with respect to the benefits which continued operation would bestow on the lives, health, safety and welfare of the occupants of this State and the effects of the variance would not substantially and adversely affect the policy and purposes of this chapter;
"(3) Any available alternative operating procedure or interim control measures are being or will be used to reduce the impact of such source on the lives, health, safety, and/or welfare of the occupants of this State; and
"(4) The continued operation of such source is necessary to national security or to the lives, health, safety or welfare of the occupants of this State."

**9.** 7 *Del.C.* § 6012(b) states:
"§ 6012. Temporary Emergency Variances.
\* \* \* \* \* \*
"(b) A temporary emergency variance may be granted only after a finding of fact by the Secretary that:
"(1) Severe hardship would be caused by the time period involved in obtaining variances pursuant to § 6011 of this title;
"(2) The emergency was of such an unforeseeable nature so as to preclude, because of time limitations, an application under § 6011 of this title;
"(3) The conditions set forth in subsections b(1)–b(4) of § 6011 of this title are satisfied."

## VIII.

Finally, the defendant contends that the fine of $52,500 imposed as punishment for failure to file monthly reports, as required by the NPDES permit, is excessive within the terms of the Cruel and Unusual Punishment Clause of the Eighth Amendment.[10]

■ Very little case law exists on the subject of constitutionally excessive fines. We find well stated, however, the guidelines set forth in *State v. Trailer Service, Inc.*, Wis.Supr., 61 Wis.2d 400, 212 N.W.2d 683, 689 (1973):

"To determine excessiveness of a fine in a constitutional sense, consideration should be given to the object designed to be 'accomplished, to the importance and magnitude of the public interest sought to be protected, to the circumstances and nature of the act for which it is imposed, and in some instances the ability of the accused to pay.' 24B C.J.S. Criminal Law § 1978c, p. 557 (1962). For a fine to be unusual or excessive, it must be so disproportionate to the offense as to shock public sentiment and contrary to the judgment of reasonable people concerning what is proper under the circumstances."

See also *Stock v. State*, Alaska Supr., 526 P.2d 3, 18 (1974).

■ We do not find the sentence, as suspended and conditionally imposed by the Trial Judge, shocking or unreasonable. While the offense of failure to file reports generally does not carry with it a culpability requiring harsh penalties, it is important to note that these reports perform an important function in enabling the Department to enforce compliance with the permits and to monitor the environment. It is also important here to recognize the great importance the General Assembly has placed on the protection of the environment. See 7 *Del.C.* § 6001.

In comparing statutory penalties in other jurisdictions for the same offense, we find significant uniformity among the states. Many jurisdictions have statutes nearly identical to § 6013(a);[11] and many more have statutes authorizing maximum penalties the same as those set forth in § 6013(a), but provide no mandatory minimum penalty.[12]

Concededly, the range of fines required by § 6013(a) is far greater than that required by other statutes requiring reporting to governmental agencies. The Water and Air Resources Act, however, is not aimed primarily at punishing those who violate the reporting provisions of the Act; its primary objective is to cure the problem as to which the failure to file reports is symptomatic. Since pollution clean–up can be very costly, the fact that fines under § 6013(a) are potentially greater than most other fines is reasonable.

Accordingly, in view of the fact that all but $1,500 of the fine was suspended by the

10. As heretofore noted, all but $1,500 of the fine was suspended by the sentencing Judge, however, on the condition that the defendant make arrangements within 90 days of the imposition of sentence to provide a sewage system in compliance with federal and state regulations. This appeal was taken timely within 30 days after the imposition of the sentence.

11. 33 U.S.C.A. § 1319(c)(1) (1978); Ala. Code tit. 22, § 22–22–14 (Supp.1979); Cal. Water Code § 13387 (West Supp.1980); Ga. Code Ann. § 17–9901(a) (Supp.1980); Haw.Rev.Stat. § 342–11(d) (1976); Ind. Code Ann. § 13–7–13–3 (Burns 1973); Mass.Gen. Laws Ann. ch. 21, § 42 (West Supp.1974–79); Mich.Stat.Ann. § 3.529(1) (1978); Minn.Stat.Ann. § 115.071, subd. (2) (West 1977); Miss. Code Ann. § 49–17–43 (Supp.1979); Mo.Ann.Stat. § 204.076(3) (Vernon Supp.1979); N.J.Stat.Ann. § 58:10A–10(F) (West Supp.1980); N.Y.Envir.Conserv. Law § 71–1933 (McKinney Supp.1979); Pa. Stat.Ann. tit. 35, § 691.602 (Purdon 1977); W.Va.Code § 20–5A–19 (Supp.1980).

12. Alaska Stat. § 46.03.790 (1976); Colo.Rev. Stat. § 25–8–609 (1973); Conn.Gen.Stat.Ann. § 25–54q (West 1975); Ill.Ann.Stat. ch. 111½, § 1044(b) (Smith–Hurd 1977); Me.Rev.Stat. tit. 38, § 571 (West 1964); Md.Nat.Res. Code Ann. § 8–1416 (Supp.1979); Mont.Rev. Codes Ann. § 69–4823(3) (Supp.1979); Nev.Rev.Stat. § 445.334 (1973); N.D.Cent. Code § 61–28–08 (Supp.1979); Ohio Rev. Code Ann. § 6111.99 (Page 1977); S.C. Code § 48–1–320 (1977); Tex. Water Code Ann. tit. 1, § 26.213(b) (Vernon Supp.1979); Vt.Stat.Ann. tit. 10, § 1275 (Supp.1980); Wash.Rev. Code Ann. § 80.50.-150(3) (Supp.1980); Wis.Stat.Ann. § 147.21(3) (West 1974).

**1334** 

Trial Judge on the condition that defendant provide, within 90 days, a sewage treatment system in compliance with Department and Federal regulations, we conclude that the fine imposed on this defendant under § 6013(a) is not so extreme or unreasonable as to be constitutionally excessive.[13] Compare *Rummel v. Estelle*, 445 U.S. 263, 285–95, 100 S.Ct. 1133, 1145–50, 63 L.Ed.2d 382 (1980) (Powell, J., dissenting).

\* \* \*

Accordingly, the judgment below is affirmed; however, the case is remanded to the Superior Court with instruction that the same suspended sentence be re–imposed in order that the defendant shall not be penalized for taking this appeal.

\* \* \*

Affirmed and Remanded.

---

**13.** During sentencing the Trial Judge noted that he would not have imposed as great a sentence as was required under § 6013(a) if he had been granted any discretion as to the mandatory minimum sentence to be imposed.

We take this opportunity to remind prosecutors that § 6013(a) was clearly intended to apply to more serious violations of the Act. Section 6013(c), which states,

"Whoever violates this chapter, or any rule or regulation promulgated thereunder or any rule or regulation in effect as of July 26, 1974, or any permit condition, or any order of the Secretary, shall be punished by a fine of not less than $50 nor more than $500 for each violation. Each day of violation shall be considered as a separate violation. The courts of the justices of the peace shall have jurisdiction of offenses under this subsection[,]"

was intended to cover less substantive violations. A prosecutor is generally given wide discretion in choosing the sections of a statute under which a defendant will be charged, but it is to be noted that it is not desirable to "prosecute all crimes at the highest degree available. Necessarily crimes are defined in broad terms that encompass situations of greatly differing gravity. Differences in the circumstances under which the crime took place, the motives or pressures activating the offender, mitigating factors of the situation or the offender's age, prior record, general background, his role in the offense, and a host of other particular factors require that the prosecutor view the whole range of possible charges as a set of tools from which he must carefully select the proper instrument to bring the charges warranted by the evidence. In exercising discretion in this way, the prosecutor is not neglecting his public duty or discriminating among offenders. The public interest is best served and even–handed justice best dispensed not by a mechanical application of the 'letter of the law' but by a flexible and individualized application of its norms through the exercise of the trained discretion of the prosecutor as an administrator of justice."
ABA Standards Relating to the Prosecution Function and the Defense Function § 3.9 (1970).