The defendant was indicted and convicted of trafficking in cannabis in violation of Alabama Code 1975, Section 20-2-80
(1)(a) *Page 481 
(Supp. 1981).[1] Sentence was six years' imprisonment and a fine of $25,000.00. The issues on appeal concern the constitutionality of Alabama's drug trafficking statutes.
 I
The defendant's argument that the fining of an indigent defendant is unconstitutional is without merit. Under the defendant's reasoning, any fine levied against an indigent is excessive simply because the defendant is unable to pay the fine. Because the imprisonment of an indigent offender for failure to pay his fine is generally recognized as constitutionally impermissible, Williams v. Illinois,399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970); Tate v. Short,401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971), the result advocated by the defendant would amount to inverse discrimination since it would enable an indigent to avoid both the fine and imprisonment for nonpayment whereas other defendants must always suffer one or the other on conviction.Tate, 401 U.S. at 399, 91 S.Ct. at 671. As noted in Tate, supra, and Williams, 399 U.S. at 244-5, 90 S.Ct. at 2024, there are other alternatives to which the State may constitutionally resort to serve its concededly valid interest in enforcing payment of fines, i.e., paying fines in installments.
In arguing that his fine is excessive and a denial of due process the defendant relies solely on Castle v. United States,399 F.2d 642 (5th Cir. 1968). There the court found that the indigent defendant's sentence of ten years' imprisonment and fine of $10,000.00 on conviction of transporting five forged money orders in interstate commerce was not excessive punishment. The court noted that appellate courts have generally refused to disturb the trial court's discretion in sentencing unless the punishment is so disproportionate to the offense committed as to be completely arbitrary and shocking to the sense of justice and thus to constitute cruel and unusual punishment in violation of the Eighth Amendment. "The cases are legion that a sentence within the statutory limits is not cruel and unusual punishment." Castle, 399 F.2d at 652.
In Castle, the court also answered the defendant's contention that the mandatory fine violated his right to due process by serving no rehabilitative purpose.
 "It might be argued that the excessive fining of an indigent violates substantive due process of law because it does not serve a legitimate end of punishment and, in fact, interferes with rehabilitation. The Supreme Court has recently indicated, however, that rehabilitation is not the only end of punishment and that special and general deterrence are still valid considerations in making the punishment fit the crime. Powell v. State of Texas, 1968, 392 U.S. 514, 88 S.Ct. 2145, 2153, 20 L.Ed.2d 1254." Castle, 399 F.2d at 652.
See also Gregg v. Georgia, 428 U.S. 153, 184, 96 S.Ct. 2909,2930, no. 30, 49 L.Ed.2d 859 (1976).
In People v. Broadie, 37 N.Y.2d 100, 371 N.Y.S.2d 471,332 N.E.2d 338 (1975), it was recognized that rehabilitation is only one of the recognized purposes of penal sanctions. The highest appellate court for the State of New York noted:
 "Faced with what it found to be a high recidivism rate in drug-related crimes, an inadequate response to less severe punishment, and an insidiously growing drug abuse problem, the Legislature could reasonably shift the emphasis to other penalogical purposes, namely isolation and deterrence."
* * * * * * *Page 482 
 "Thus, to achieve the deterrence, so far seemingly elusive, the would-be drug trafficker had to be put on notice that, should he be caught, his fate was sealed regardless of his position in the hierarchy of distribution and regardless of the quantity of drugs in which he dealt." Broadie, 371 N.Y.S. at 478-479, 332 N.E.2d at 344.
This entire area is summed up in Hindt v. State,421 A.2d 1325 (Del.Supr. 1980).
 "Very little case law exists on the subject of constitutionally excessive fines. We find well stated, however, the guidelines set forth in State v. Trailer Service, Inc., Wis.Supr., 61 Wis.2d 400, 212 N.W.2d 683, 689 (1973):
 "`To determine excessiveness of a fine in a constitutional sense, consideration should be given to the object designed to be "accomplished, to the importance and magnitude of the public interest sought to be protected, to the circumstances and nature of the act for which it is imposed, and in some instances the ability of the accused to pay." 24B C.J.S. Criminal Law, Section 1978c, p. 557 (1962). For a fine to be unusual or excessive, it must be so disproportionate to the offense as to shock public sentiment and contrary to the judgment of reasonable people concerning what is proper under the circumstances.'"
421 A.2d at 1333.
The fine levied against the defendant in this case was fixed and required by statute. Considering the serious problem Section 20-2-80 seeks to combat, the importance of the public interest sought to be protected and the enormous illegal profits involved in the undetected sale of marijuana, the mandatory $25,000.00 fine does not shock our sense of justice and is not disproportionate to the offense committed.
 II
The defendant contends that Section 20-2-80 (1)(a) constitutes cruel and unusual punishment because it requires a minimum term of imprisonment of three calendar years upon conviction of the possession or sale of a quantity of marijuana in excess of 2.2 pounds but less than 2,000 pounds.
In Broadie, supra, the Court of Appeals of New York upheld "drug" laws which contained sentencing provisions imposing a mandatory maximum sentence of life imprisonment and minimum from one or six years to eight and one-third years against a challenge that such provisions constituted cruel and unusual punishment.
 "The principal issue is whether the so-called `drug' laws, in mandating life imprisonment and, therefore, lifetime parole on parole release, prescribe sentences so disproportionate as would constitute cruel and unusual punishment in violation of constitutional limitations. . . .
 "There should be an affirmance. The sentences are not grossly disproportionate in constitutional analysis. The Legislature may distinguish among the ills of society which require a criminal sanction, and prescribe, as it reasonably views them, punishments appropriate to each." Broadie, 371 N.Y.S.2d at 474-5, 332 N.E.2d at 341.
After analyzing the history and purpose of the cruel and unusual punishment clause, the court noted that drug trafficking was a grave offense and posed a serious threat to society. The court found that the severe punishment of the drug trafficking statute was constitutionally permissible.
 "Summarizing the various factors and comparisons pertinent to gross disproportionality, the Legislature could reasonably conclude that drug trafficking was a grave offense; that the defendants, as sellers, posed a serious threat to society; and that the sentencing statutes, though severe and inflexible, would serve, at least, to isolate and deter. Compared both `internally', to punishments for other crimes under the Penal Law, and `externally', to punishments imposed elsewhere for the same or similar offenses, the narcotics laws are relatively severe, but not irrationally so, given the epidemic dimensions of the problem.
 "On this analysis, the punishments in these cases were not so grossly disproportionate *Page 483 
that they may be declared unconstitutional." Broadie, 371 N.Y.S. at 480-481, 332 N.E.2d at 345.
Florida has a drug trafficking statute very similar to Alabama's. In State v. Benitez, 395 So.2d 514 (Fla. 1981), the Supreme Court of Florida held that although the penalties of the drug trafficking statute were "certainly severe" they were "by no means cruel and unusual in light of their potential deterrent value and the seriousness of the crime involved."
 "Appellees also argue that the mandatory sentences in section 893.135 constitute cruel and unusual punishment since they are unnecessarily severe and disproportional to the nature of the crime. This Court has consistently upheld minimum mandatory sentences, regardless of their severity, against constitutional attacks arguing cruel and unusual punishment. See, e.g., McArthur v. State, 351 So.2d 972 (Fla. 1977); Banks v. State, 342 So.2d 469
(Fla. 1976); O'Donnell v. State, 326 So.2d 4
(Fla. 1975). The dominant theme which runs through these decisions is that the legislature, and not the judiciary, determines maximum and minimum penalties for violations of the law. While it is often said that in an extreme case — wherein the sentence was grossly disproportionate to the severity of the crime — the legislature's judgment would run afoul of the constitutional prohibition, this Court has never addressed such a situation in the context of statutory sentencing minima.
 "The recent decision of the United States Supreme Court in Rummel v. Estelle, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), indicates that similar considerations prevail under the federal constitution. In that case, the Court held that a mandatory life sentence imposed on the petitioner pursuant to a Texas recidivist statute did not constitute cruel and unusual punishment under the eighth amendment. The majority's analysis of this area noted that:
 "(t)his Court has on occasion stated that the Eighth Amendment prohibits imposition of a sentence which is grossly disproportionate to the severity of the crime. . . . In recent years this proposition has appeared most frequently in opinions dealing with the death penalty. . . . Because a sentence of death differs in kind from any sentence of imprisonment, no matter how long, our decisions applying the prohibition of cruel and unusual punishment to capital cases are of limited assistance in deciding the constitutionality of the punishment meted out to Rummel. "Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare.
 "Id., 445 U.S. at 271, 100 S.Ct. at 1138 (citations omitted). After analyzing one of these rare successful challenges, Weems v. United States, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910), the majority concluded:
 "Given the unique nature of the punishments considered in Weems in the death-penalty cases, one could argue without fear of contradiction by any decision of this Court that for crimes concededly classified and classifiable as felonies, that is, as punishable by significant terms of imprisonment in a state penitentiary, the length of the sentence actually imposed is purely a matter of legislative prerogative.
 "Id., 445 U.S. at 273, 100 S.Ct. at 1139 (footnote omitted)." Benitez, 395 So.2d at 518.
We conclude that the mandatory sentences of Alabama's drug trafficking law do not constitute cruel and unusual punishment. See also Paras v. State, 247 Ga. 75, 274 S.E.2d 451 (1981);Opinion of The Justices To The House of Representatives,393 N.E.2d 313 (Mass. 1979).
 III
The defendant argues that Section 20-2-81 (b)[2] denies equal protection of the *Page 484 
law to persons convicted of drug trafficking who cannot provide "substantial assistance" to law enforcement officials. InBenitez, 395 So.2d at 519, the Florida Supreme Court found this same argument "patently without merit." As the court did inBenitez, we find that Section 20-2-81 (b) does not operate to deny the defendant equal protection because it passes the "rational basis test." Legislation which does not affect a "fundamental" right or a "suspect" class need only bear a "rational relationship" to a legitimate state interest. Thus a classification which does not affect a fundamental right or a suspect class will be upheld unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that a court can only conclude that the legislature's actions were arbitrary and irrational. The National Organization For The Reform ofMarijuana Laws v. Bell, 488 F. Supp. 123 (D.D.C. 1980). Separate treatment of defendants does not violate any constitutional guarantee of equal protection so long as that treatment is reasonable and founded on a rational basis.
 IV
Finally, the defendant argues that the drug trafficking provisions of the Alabama Code are unconstitutional because the trial judge cannot grant probation or reduce sentence unless the prosecuting attorney so moves the court. Section 20-2-81 (b). This same argument was advanced in Benitez and rejected by the Supreme Court of Florida.
 "Appellees' second argument premised on the constitutional separation of powers is that subsection (3) usurps the sentencing function from the judiciary and assigns it to the executive branch, since the benefits of subsection (3) are triggered by the initiative of the state attorney. Under the statute, the ultimate decision on sentencing resides with the judge who must rule on the motion for reduction or suspension of sentence. `So long as a statute does not wrest from the courts the final
discretion to impose sentence, it does not infringe upon the constitutional division of responsibilities.' People v. Eason, 40 N.Y.2d 297, 301, 386 N.Y.S.2d 673, 676, 353 N.E.2d 587, 589
(1976) (emphasis in original) (rejecting a separation of powers attack on a similar provision in New York's drug laws)." Benitez, 395 So.2d at 519.
We hold that Alabama's drug trafficking provisions (Section20-2-80-1) are constitutional. The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.
[1] Alabama Code 1975, Section 20-2-80 (Supp. 1981) provides in pertinent part:
"Except as authorized in chapter 2, Title 20
 "(1) Any person who knowingly sells, manufactures, delivers, or brings into this state, or who knowingly in actual or constructive possession of, in excess of one kilo or 2.2 pounds of cannabis is guilty of a felony, which felony shall
 be known as `trafficking in cannabis'. If the quantity of cannabis involved:
 "a. Is in excess of one kilo or 2.2 pounds, but less than 2,000 pounds, such person shall be sentenced to a mandatory term of imprisonment of three calendar years and to pay a fine of $25,000.00."
[2] Alabama Code 1975, Section 20-2-81 (Supp. 1981) provides:
 "(a) Notwithstanding the provisions of chapter 22, Title 15, with respect to any person who is found to have violated this article, adjudication of guilt or imposition of sentence shall not be suspended, deferred, or withheld, nor shall such person be eligible for parole prior to serving the mandatory minimum term of imprisonment prescribed by this article.
 "(b) The prosecuting attorney may move the sentencing court to reduce or suspend the sentence of any person who is convicted of a violation of this article and who provides substantial assistance in the identification, arrest, or conviction of any of his accomplices, accessories, coconspirators, or principals. The arresting agency shall be given an opportunity to be heard in aggravation or mitigation in reference to any such motion. Upon good cause shown, the motion may be filed and heard in camera. The judge hearing the motion may reduce or suspend the sentence if he finds that the defendant rendered such substantial assistance. (Acts. 1980, N. 80-587, p. 926.)"