980 So.2d 440 (2007)
Antonio Jermaine FLAKE
v.
STATE.
CR-05-0471.
Court of Criminal Appeals of Alabama.
August 31, 2007.
*441 Thomas J. Azar, Jr., Montgomery, for appellant.
Troy King, atty. gen., and Marc A. Starrett, asst. atty. gen., for appellee.
PER CURIAM.
The appellant, Antonio Jermaine Flake, was convicted of trafficking in marijuana, a violation of § 13A-12-231(1), Ala.Code 1975, and failure to affix tax stamps, a violation of § 40-17A-9, Ala.Code 1975. He was sentenced to 10 years' imprisonment on each conviction, the sentences to be served concurrently. The sentence was split, and Flake was ordered to serve three years in prison followed by two years on probation. The court postponed the sentence for one year pending a review in December 2006. Flake was also assessed a mandatory fine of $25,000.
The State's evidence tended to show that on May 11, 2004, officers from the special operations division of the Montgomery Police Department executed a search warrant on 213 West South Boulevard in Montgomery. Corp. R.J. Stillman, a narcotics agent with the Montgomery Police Department, testified that he had conducted two controlled buys with a confidential *442 informant at that residence and that he had reason to believe there was a large quantity of marijuana in the house. The focus of the police investigation was Antwon Hopkins.
A SWAT team accompanied the special operations officers to execute the warrant and entered the house first to secure the premises. Flake and two other males, one identified as Antwon Hopkins, were found in the house. Hopkins was in possession of over $4,000 in cash. Flake was found in what was identified by law enforcement as "Bedroom 2." Numerous police officers testified that when they entered the house the smell of raw marijuana was "overwhelming" or "overpowering."
Police discovered over 20 pounds of marijuana in the house. In "Bedroom 3," police recovered 16 pounds of marijuana that was contained in 16 one-pound plastic bags. Marijuana was found under the bed, in a drawer, and in the closet. In this same bedroom police discovered a set of scales in the middle of the floor.
In the room where Flake was found, described as "Bedroom 2," the officers discovered an open suitcase with "trace" amounts of marijuana inside. They also found a plastic container that contained a bag of marijuana packaged for saleit was in a plastic bag.
The confidential informant who participated in the controlled buys testified. He identified Flake as an individual who was in the house when he went to buy a quarter pound of marijuana immediately before the search warrant was executed. Flake, he said, was walking from the living room of the house when he was waiting for the drugs he had purchased.
Flake testified in his defense and said that the house belonged to his cousin, Allen Timmons. He said that he went there every week to get his car washed. Flake also said that he did not smell marijuana in the house because, he said, "I wasn't searching to smell it. I went to get my car washed." (R. 140.) Flake testified that he had previously been arrested for possessing marijuana and that he smoked marijuana on occasion.

I.
Flake first argues that the evidence was insufficient to convict him of either trafficking in marijuana or failure to affix tax stamps.
Initially, we observe that Flake never objected to the sufficiency of the evidence related to the charge of failure to affix tax stamps. In order for the issue of the sufficiency of the evidence to be preserved, the issue must first be presented to the lower court. See Reed v. State, 717 So.2d 862 (Ala.Crim.App.1997). Because no objection was made, this issue is not properly before this Court. See Payne v. State, 946 So.2d 930 (Ala.Crim.App.2006). However, Flake did preserve his claim that there was not sufficient evidence to convict him of trafficking in marijuana. At the end of the State's case and in his motion for a new trial, Flake argued that there was not sufficient evidence to convict him of trafficking in excess of 2.2 pounds of marijuana.
There is no question that Flake was not in actual possession of the more than 20 pounds of marijuana seized from the residence; thus, the State had to prove that Flake was in constructive possession of the drugs. See Ex parte J.C., 882 So.2d 274 (Ala.2003).
"`Constructive possession exists when the defendant exercises, or has the power to exercise, dominion and control over the item.' United States v. Laughman, 618 F.2d 1067, 1077 (4th Cir.1980); United States v. Phillips, 496 F.2d 1395, 1397 (5th Cir.1974), cert. denied, 422 *443 U.S. 1056, 95 S.Ct. 2680, 45 L.Ed.2d 709 (1975). `Constructive possession may be determined by weighing those facts which tend to support the defendant's necessary control over the substance against those facts which demonstrate a lack of dominion and control.' Roberts [v. State], 349 So.2d [89] at 91 [(Ala.Crim.App.1977)]."
German v. State, 429 So.2d 1138, 1140 (Ala.Crim.App.1982). The German Court further stated:
"`The possession vital to the convictions under review may, in familiar language, be either actual or constructive. It thus is unnecessary to show that the accused had the drug on this person or within his immediate reach; it is enough that he "was knowingly in a position or had the right to exercise dominion and control over" it, either directly or through others. Possession in that sense suffices though it is jointly shared, and it may be established by circumstantial as well as direct evidence.'"
429 So.2d at 1141-42, quoting United States v. Staten, 189 U.S.App.D.C. 100, 105, 581 F.2d 878, 883 (D.C.Cir.1978).
"Where contraband is seized inside a residence, `constructive possession can only arise "where the prohibited material is found on the premises owned or controlled by the appellant."' Crane v. State, 401 So.2d 148, 149 (Ala.Crim.App.1981) (quoting Williams v. State, 340 So.2d 1144, 1145 (Ala.Crim. App.1976)). `"When constructive possession is relied on, the prosecution must also prove beyond a reasonable doubt that the accused had knowledge of the presence of the controlled substances."' Ex parte Tiller, 796 So.2d [310] at 312 [(Ala.2001)] (quoting Posey v. State, 736 So.2d 656, 658 (Ala.Crim.App. 1997)).
"`While non-exclusive possession may raise a suspicion that all the occupants had knowledge of the contraband found, a mere suspicion is not enough. Some evidence that connects a defendant with the contraband is required. Generally, the circumstances that provide that connection include:
"`"(1) evidence that excludes all other possible possessors; (2) evidence of actual possession; (3) evidence that the defendant had substantial control over the particular place where the contraband was found; (4) admissions of the defendant that provide the necessary connection, which includes both verbal admissions and conduct that evidences a consciousness of guilt when the defendant is confronted with the possibility that illicit drugs will be found; (5) evidence that debris of the contraband was found on defendant's person or with his personal effects; (6) evidence which shows that the defendant, at the time of the arrest, either used the contraband very shortly before, or was under its influence."'"
Ex parte J.C., 882 So.2d at 277-78, quoting Grubbs v. State, 462 So.2d 995, 997-98 (Ala.Crim.App.1984), quoting in turn Temple v. State, 366 So.2d 740, 743 (Ala.Crim. App.1978).
Here, Flake was found in a bedroom where a open suitcase that contained trace amounts of marijuana was found. In the same bedroom police also recovered a plastic bag that contained marijuana. The smell of raw marijuana was overwhelming in the house. Also, Flake was present when the confidential informant had previously been to the house to buy a quarter pound of marijuana.
"While proximity to a contraband alone is not enough to establish constructive possession, `where other circumstantial *444 evidence . . . is sufficiently probative, proximity to contraband coupled with inferred knowledge of its presence will support a finding of guilt of such charges.' Soriano v. State, 527 So.2d 1367, 1372 (Ala.Cr.App.1988); United States v. Whitmire, 595 F.2d 1303, 1316 (5th Cir.1979), cert. denied, 448 U.S. 906, 100 S.Ct. 3048, 65 L.Ed.2d 1136 (1980)."
Mobley v. State, 563 So.2d 29, 32 (Ala. Crim.App.1990). "`[T]he voluntary presence of the accused in an area obviously devoted to preparation of drugs for distribution is a circumstance potently indicative of his involvement in the operation.'" German v. State, 429 So.2d at 1142, quoting United States v. Staten, 189 U.S.App. D.C. at 107 n. 67, 581 F.2d at 885 n. 67.
Flake was arrested in a house that was clearly devoted to the preparation and sell of marijuana. There was sufficient evidence to present to the jury for its determination the question of whether Flake was in constructive possession of over 2.2 pounds of marijuana. The circuit court gave detailed instructions on the concept of "constructive possession," and the jury found Flake guilty of trafficking. We see no reason to disturb the jury's verdict in this case.

II.
Flake also argues that the verdict was against the great weight of the evidence.
"`We have repeatedly held that it is not the province of this court to reweigh the evidence presented at trial.' Whitt v. State, 733 So.2d 463, 470 (Ala.Crim.App. 1998). `"[T]he credibility of witnesses and the weight or probative force of testimony is for the jury to judge and determine."' Harris v. State, 513 So.2d 79, 81 (Ala.Crim.App.1987), quoting Byrd v. State, 24 Ala.App. 451, 451, 136 So. 431, 431 (1931). `"When the jury has passed on the credibility of evidence tending to establish the defendant's guilt, this Court cannot disturb its finding."' Rowell v. State, 647 So.2d 67, 69 (Ala.Crim.App. 1994), quoting Collins v. State, 412 So.2d 845, 846 (Ala.Crim.App. 1982). `Any issues regarding the weight and credibility of the evidence are not reviewable on appeal once the state has made a prima facie case.' Jones v. State, 719 So.2d 249, 255 (Ala.Crim.App. 1996), aff'd, 719 So.2d 256 (Ala. 1998)."
Clark v. State, 896 So.2d 584, 638 (Ala. Crim.App.2000) (opinion on return to remand and on application for rehearing).

III.
Flake last argues that the mandatory fine assessed in drug-trafficking cases is an excessive fine in violation of the Eighth Amendment to the United States Constitution.
Section 13A-12-231(1)(a), Ala.Code 1975, provides that, if the weight of the marijuana exceeds 2.2 pounds but is less than 100 pounds, the mandatory fine upon conviction is $25,000. Flake was assessed the mandatory fine of $25,000.
Flake never argued at sentencing or in his motion for a new trial that the $25,000 mandatory fine was a violation of the Eighth Amendment to the United States Constitution. Therefore, this issue is not properly before this Court. See Buford v. State, 891 So.2d 423 (Ala.Crim.App.2004).
Moreover, even if this issue had been properly preserved for appellate review we would find no constitutional violation. In Wheatt v. State, 410 So.2d 479 (Ala.Crim.App.1982), this Court first addressed whether the mandatory $25,000 fine assessed pursuant to § 20-2-80, Ala. Code 1975 (now codified at § 13A-12-231), was excessive. We stated:
"The fine levied against the defendant in this case was fixed and required by *445 statute. Considering the serious problem Section 20-2-80 seeks to combat, the importance of the public interest sought to be protected and the enormous illegal profits involved in the undetected sale of marijuana, the mandatory $25,000.00 fine does not shock our sense of justice and is not disproportionate to the offense committed."
410 So.2d at 482.
As the Delaware Supreme Court aptly stated in Traylor v. State, 458 A.2d 1170 (Del.1983):
"Traylor's final argument is that the imposition of a $75,000 fine, as required by 16 Del.C. § 4753A(a)(3)a, constitutes cruel and unusual punishment in violation of the eighth amendment. Because he is indigent, he contends that the large fine will require him to work several years in order to pay it. The State responds that under the guidelines set out in Hindt v. State, Del.Supr., 421 A.2d 1325 (1980), the fine is constitutional.
"As this Court observed in Hindt, there is `very little case law' delineating the limits of a constitutionally permissible fine. 421 A.2d at 1333. Hindt, however, does indicate what should be considered when reviewing an allegedly excessive fine: the statutory objective, the importance and magnitude of the public interest sought to be protected, the circumstances and nature of the act for which the fine is imposed, the defendant's ability to pay, statutory penalties for the same offense in other jurisdictions, and possible penalties for other offenses committed in Delaware. Id.

"We are well aware that the organized traffic in illegal drugs is a serious problem, causing not only debilitating effects in those who use such substances, but fostering additional crimes. Drug trafficking now generates profits in the billions of dollars for those involved in it, and the large mandatory fines are a legitimate effort to undercut these enormous, but illegal, profits. Delaware's law is also designed to aid law enforcement officers in their investigation and prosecution of the drug traffic regardless of where a defendant may stand in the distribution chain. Thus, the statutory penalties are calculated to provide a strong incentive for violators to cooperate with the police, becoming eligible in the process for a sentence reduction under 16 Del.C. § 4753A(c).
"Responding to the increased trafficking in illegal drugs, the legislatures of other states have enacted laws similar to section 4753A.11 Under these laws, Traylor would have been sentenced in Florida and Alabama to three years in prison and fined $50,000; in North Carolina, his sentence would have been fourteen years in prison and a minimum fine of $50,000. Delaware law, as applied to Traylor, is harsh, but not so harsh as to be disproportionate to his offense when compared to the laws of other states. If section 4753A did not exist, Traylor would have been subject to prosecution under 16 Del.C. § 4751(a). According to section 4751(a), a person, addicted to narcotic drugs, `who manufactures, delivers or possesses with intent to manufacture or deliver' heroin could be sentenced to a maximum of twenty-five years imprisonment and fined $5,000 to $50,000. The General Assembly, though, could conclude that those penalties were inadequate to remove the profit motive behind the drug traffic, thus requiring imposition of a large fine. Compare Hindt, 421 A.2d at 1333. In light of these factors, the fine imposed as part of Traylor's sentence does not violate the eighth amendment. Accord Wheatt v. State, Ala.Cr.App., 410 So.2d *446 479 (1982); State v. Benitez, Fla.Supr., 395 So.2d 514 (1981).
11 E.g., Ala.Code § 20-2-80 (Supp. 1982); Fla. Stat. Ann. § 893.135 (West Supp.1983); Ga.Code Ann. § 79A-811 (Supp.1982); Ill.Ann.Stat.ch. 56½, § 1401 (Smith-Hurd Supp.1982-83); Mich. Comp. Laws Ann. §§ 333.7401(1), 333.7403(1) (1980); N.C. Gen.Stat. § 90-95(h) (1981); S.C.Code Ann. § 44-53-370(e) (Law.Co-op.Supp.1982)."
458 A.2d at 1177-79 (some footnotes omitted). "`Indigent offenders would be advantaged over other offenders if they were not subject to fines because of their inability to pay. Wheatt v. State, 410 So.2d 479 (Ala.Cr.App.1982); Tate v. Short, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971).'" Grimsley v. State, 678 So.2d 1197, 1209 (Ala.Crim.App.1996), quoting Eldridge v. State, 418 So.2d 203, 207 (Ala.Crim.App. 1982).
Accordingly, the $25,000 mandatory fine imposed for Flake's conviction for trafficking did not violate the Eighth Amendment.
For the foregoing reasons, we affirm Flake's conviction for trafficking in marijuana and for failing to affix tax stamps.
AFFIRMED.
BASCHAB, P.J., and McMILLAN and WISE, JJ., concur.
SHAW, J., concurs in the result.
WELCH, J., dissents, with opinion.
WELCH, Judge, dissenting.
For the reasons set forth below, I respectfully dissent.
Antonio Jermaine Flake was convicted of trafficking in marijuana, a violation of § 13A-12-231(1), Ala.Code 1975, and of failure to affix tax stamps, a violation of § 40-17A-9, Ala.Code 1975.
The evidence adduced at trial tended to show the following:
On May 11, 2004, officers from the special operations division of the Montgomery Police Department executed a search warrant at 213 West South Boulevard in Montgomery. The officers were acting on information they attained from a confidential informant, who had told them there were large quantities of marijuana in the house.
A SWAT team that accompanied the special operations officers were first into the house. Three people were found in the house, including Flake, and each was taken into custody and removed from the house. One SWAT officer testified that Flake was found in what was identified as "Bedroom 2."
The special-operations officers then entered the house and executed the search. They found about 16 pounds of marijuana in what was identified as "Bedroom 3." Some of the marijuana was packaged for sale. The officers also found a set of scales in Bedroom 3.
In Bedroom 2, the officers found an open suitcase with a "trace" of marijuana inside. In that bedroom, they also found a plastic container with a snap-down lid containing marijuana packaged for sale. A "little plastic bag" of marijuana was also found in a cigar box in Bedroom 2. (R. 95.)
The officers involved in the search all testified that as soon as they entered the house, they noticed a strong, "overwhelming" smell of raw or fresh marijuana. (R. 112.)
There was no evidence indicating that Flake owned or stayed at the house that was searched. Officers did not see Flake doing anything wrong. No marijuana or money was found on Flake. A search of Flake's car, which was parked outside the house, revealed no contraband. Officers *447 conceded that Flake was not the target of the search, and, indeed, before finding Flake in the house, they had no information indicating that Flake was involved in the sale of drugs.
Flake testified that the house belonged to his cousin, Allen Timmons. (R. 139.) Flake said he went to the house the day of the search to have his car washed, as he had done on previous occasions. The confidential informant who provided information to the special-operations officers said he had seen Flake once before at the house, but, he said, Flake did not sell him marijuana.
There was no testimony at trial regarding affixing of tax stamps.
Flake contends that the evidence presented was insufficient to convict him of either trafficking in marijuana or failure to affix tax stamps.
"`"In determining the sufficiency of the evidence to sustain the conviction, this Court must accept as true the evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider the evidence in the light most favorable to the prosecution.' Faircloth v. State, 471 So.2d 485, 489 (Ala.Cr.App.1984), affirmed, Ex parte Faircloth, [471] So.2d 493 (Ala.1985).
"`". . . .
"`"`The role of appellate courts is not to say what the facts are. Our role, . . . is to judge whether the evidence is legally sufficient to allow submission of an issue for decision to the jury.' Ex parte Bankston, 358 So.2d 1040, 1042 (Ala. 1978). An appellate court may interfere with the jury's verdict only where it reaches `a clear conclusion that the finding and judgment are wrong.' Kelly v. State, 273 Ala. 240, 244, 139 So.2d 326 (1962). . . . A verdict on conflicting evidence is conclusive on appeal. Roberson v. State, 162 Ala. 30, 50 So. 345 (1909). `[W]here there is ample evidence offered by the state to support a verdict, it should not be overturned even though the evidence offered by the defendant is in sharp conflict therewith and presents a substantial defense.' Fuller v. State, 269 Ala. 312, 333, 113 So.2d 153 (1959), cert. denied, Fuller v. Alabama, 361 U.S. 936, 80 S.Ct. 380, 4 L.Ed.2d 358 (1960)." Granger [v. State], 473 So.2d [1137,] 1139 [(Ala.Crim.App.1985)]."'
Jones v. State, 946 So.2d 903 (Ala.Crim. App.2006), quoting White v. State, 546 So.2d 1014, 1017 (Ala.Crim.App.1989).
The evidence is undisputed that Flake was not in actual possession of any of the marijuana found during the search of the house, which is made the basis of his trafficking conviction. Therefore, the State must prove beyond a reasonable doubt that Flake had constructive possession of the marijuana. Ex parte J.C., 882 So.2d 274 (Ala.2003).
"`[T]o establish constructive possession, the State must prove "(1) [a]ctual or potential physical control, (2) intention to exercise dominion and (3) external manifestations of intent and control."'" Id. at 277, quoting Ex parte Fitken, 781 So.2d 182, 183 (Ala.2000), quoting in turn Bright v. State, 673 So.2d 851, 852 (Ala.Crim.App. 1995).
"Just as the mere presence of a person at the time and place of a crime is not sufficient to justify a conviction for the commission of that crime, so the mere presence of the accused in a place where a controlled substance is found is not in and of itself evidence of possession." German v. State, 429 So.2d 1138, 1140 (Ala.Crim. App.1982) (citation omitted).
"Where contraband is seized inside a residence, `constructive possession can only arise "where the prohibited material is found on the premises owned or *448 controlled by the appellant."' Crane v. State, 401 So.2d 148, 149 (Ala.Crim.App.1981) (quoting Williams v. State, 340 So.2d 1144, 1145 (Ala.Crim. App.1976)). `"`When constructive possession is relied on, the prosecution must also prove beyond a reasonable doubt that the accused had knowledge of the presence of the controlled substances.'"' Ex parte Tiller, 796 So.2d [310] at 312 [(Ala.2001)] (quoting Posey v. State, 736 So.2d 656, 658 (Ala.Crim. App.1997)).
"`While non-exclusive possession may raise a suspicion that all the occupants had knowledge of the contraband found, a mere suspicion is not enough. Some evidence that connects a defendant with the contraband is required. Generally, the circumstances that provide that connection include:
"`"(1) evidence that excludes all other possible possessors; (2) evidence of actual possession; (3) evidence that the defendant had substantial control over the particular place where the contraband was found; (4) admissions of the defendant that provide the necessary connection, which includes both verbal admissions and conduct that evidences a consciousness of guilt when the defendant is confronted with the possibility that illicit drugs will be found; (5) evidence that debris of the contraband was found on defendant's person or with his personal effects; (6) evidence which shows that the defendant, at the time of the arrest, had either used the contraband very shortly before, or was under its influence."'"
Ex parte J.C., 882 So.2d at 277-78 (quoting Grubbs v. State, 462 So.2d 995, 997-98 (Ala.Crim.App.1984), quoting in turn Temple v. State, 366 So.2d 740, 743 (Ala.Crim. App.1978)).
"`"`The kinds of evidence which might be relevant, but which by themselves do not add the necessary connection are: (1) admissions of previous use; (2) conduct that might be construed as evidencing a consciousness of guilt which was not displayed upon the defendant's confrontation of the possibility that an illicit drug would be discovered; (3) evidence of previous use; (4) evidence that showed the defendant's physical proximity to the contraband.'"'"
Goodloe v. State, 783 So.2d 931, 934 (Ala. Crim.App.2000) (quoting Posey v. State, 736 So.2d 656, 658-59 (Ala.Crim.App.1997) (quoting other sources)).
In Goodloe, this Court reversed Goodloe's conviction for trafficking in marijuana and unlawful possession of drug paraphernalia, which was based on a theory of constructive possession, on the ground that the evidence did not connect Goodloe with the marijuana and the drug paraphernalia.
In Goodloe, the defendant was grilling on the front porch when police arrived to execute a search warrant. It was undisputed that Goodloe was one of several people who lived at the house, and one of six people present at the time the search was conducted. The search netted 10 large plastic bags containing marijuana. The bags were found in a suitcase in a spare bedroom. Also, four weapons were found in a bedroom; a partially smoked marijuana cigarette was found on a coffee table in the den; several small bags of marijuana and a small amount of cocaine were also found in the den, scales and a razor blade were found in a drawer in the den; a bulletproof vest was found on a sofa in the den; two weapons were found in the den; and a police scanner was found in the den.
*449 In reversing the conviction, this Court focused on the evidence that was not admitted during the course of the trial and made the following findings: (1) that the evidence presented did not exclude as possible possessors all the other individuals present; (2) that none of the testimony indicated that Goodloe had engaged in the distribution of marijuana; (3) that no testimony was presented indicating that the house smelled of marijuana; (4) that Goodloe was outside at the time of the search; (5) that someone else claimed the marijuana cigarette and the drugs found in the den; and (6) that no fingerprint evidence was admitted indicating that Goodloe had been close proximity to the drawer containing the drug paraphernalia. 783 So.2d at 935 and 936. "The mere facts that Goodloe was present at the time of the search and that he lived at the residence, in light of the number of other people who had access to his house at the time of the search, are insufficient to prove that he had had knowledge of the presence of the suitcase filled with marijuana in the guest bedroom or knowledge of the presence of the drug paraphernalia." 783 So.2d at 935.
Here, the evidence is undisputed that Flake was a visitor to the house where the marijuana was found, and two other adults were present at the house when the search was conducted. When the SWAT team entered the house, its members found Flake in a bedroom with an open suitcase containing only a trace of marijuana. The two bags of marijuana found in the bedroom where Flake was found were discovered inside closed containers, and no fingerprint evidence was admitted to connect Flake to the containers. The vast majority of marijuana found in the house was in a room other than the room in which Flake was found. Although the house smelled of fresh or raw marijuana, there was no evidence indicating that Flake had recently used or was under the influence of marijuana. There was no evidence presented indicating that Flake had engaged in the distribution of marijuana. No marijuana was found on Flake's person, and no indicia of drug use or trafficking, such as substantial sums of money or weapons, were found on Flake's person or in his car, which was parked just outside the house.
To sustain a conviction based on circumstantial evidence, this Court must consider the evidence in a light most favorable to the State and determine "whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt." Cumbo v. State, 368 So.2d 871, 874 (Ala.Crim.App.1978). As was the situation in Goodloe, because Flake was not in exclusive control of the premises where the marijuana was found, circumstantial evidence that "`excluded every reasonable hypothesis except that of guilt'" had to establish a connection between Flake and the marijuana. Goodloe, 783 So.2d at 935, quoting Cumbo, 368 So.2d at 874.
Even when viewed in a light most favorable to the State, there is simply no evidence establishing a connection between Flake and the marijuana that excludes every reasonable hypothesis except guilt. When compared with the evidence against the defendant in Goodloe, which we found to be insufficient, the evidence against Flake in this case appears to be even less compelling. Essentially, the evidence against Flake is that when the SWAT team entered the house to search, he was found in a bedroom in which there were an open suitcase with a "trace" of marijuana inside and two bags of marijuana, both of which were discovered in closed containers. There was also the strong smell of marijuana in the house. That evidence simply does not exclude every reasonable hypothesis except Flake's guilt.
I am mindful that this Court cannot substitute its judgment for that of the *450 jury. Nonetheless, I believe that, as a matter of law, the evidence in this case is simply insufficient to sustain a finding of constructive possession upon which to base a conviction for trafficking in marijuana.
Moreover, there is no evidence in the record regarding whether tax stamps were affixed to the marijuana discovered in the house.
Because I believe the evidence is insufficient to sustain the jury's verdict of guilty on the charges of trafficking in marijuana and failure to affix a tax stamp to the marijuana, I would reverse the judgment in this case.