LEIGH M. CLARK, Retired Circuit Judge.
A jury found this appellant guilty on a trial on an indictment as follows:
“The Grand Jury of said County charge that before the finding of this indictment George E. Washington, Jr., alias George Washington, the true or Christian name of whom being otherwise unknown to the Grand Jury, did on to-wit: July 30, 1982, while at or near Midway Road, Midway Community, Tuskegee, Alabama, unlawfully possess for trafficking, 4.76 pounds of cannabis (marijuana), a controlled substance, contrary to and in violation of the provisions of the Alabama Uniform Controlled Substances Act, in violation of Section 20-2-80 of the Code of Alabama; against the peace and dignity of the State of Alabama.”
Subsection 20-2-80(l)a of the Code of Alabama 1975, provides:
“Except as authorized in chapter 2, Title 20:
*765 “(1) Any person who knowingly sells, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, in excess of one kilo or 2.2 pounds of cannabis is guilty of a felony, which felony shall be known as ‘trafficking in cannabis.’ If the quantity of cannabis involved:
“a. Is in excess of one kilo or 2.2 pounds, but less than 2,000 pounds, such person shall be sentenced to a mandatory minimum term of imprisonment of three calendar years and to pay a fine of $25,000.00.”
After a sentencing hearing, the court fixed defendant’s punishment at imprisonment for three years and assessed a fine of twenty-five thousand ($25,000.00) dollars.
Three issues are presented in appellant’s brief, which we will now consider in the order of their presentation and under their respective captions set forth in appellant’s brief.
I.
“THE TRIAL COURT ERRED IN DENYING APPELLANT’S MOTION TO SUPPRESS THE STATE’S EVIDENCE.”
Prior to the commencement of the trial, the court conducted a hearing on defendant’s motion to suppress evidence of what was found by the State growing on land near his trailer home; during the trial of the case, the court conducted a hearing, out of the presence of the jury, of defendant’s motion to suppress evidence as to what was found in the defendant’s trailer. Appellant contends that the rulings of the court in overruling defendant’s motion or motions to suppress constituted error prejudicial to appellant, which we now consider under separate headings, A and B.
A.
On the first hearing of defendant’s motion to suppress, i.e., the motion challenging the evidence as to what was found on the land, two witnesses testified, both on call of the defendant. They were State Trooper David Conrad and Investigator Henry Peavey of the Tuskegee Police Department.
Officer Conrad stated that he had been flying airplanes for the State Troopers’ Office for six or seven years, that on July 30, 1982, he was requested by a narcotics officer of the Alabama Department of Public Safety to check over a “specific geographical area in Macon County, for growing marijuana.” After contacting officers of the Tuskegee Police Department, Officer Conrad proceeded from Dothan, Alabama, to the specific area he was to view and while flying at an altitude in excess of five hundred feet he “spotted some marijuana plants growing.” He testified further:
“Q. Could you describe the area in terms of trees, bushes, houses, that you were flying over?
“A. There was a trailer [identified in other evidence as the trailer in which defendant lived], tall trees in the back of it that was surrounding on the north side and the south in the general area. Then to the northwest of the trailer on the other side of the driveway there were some small bushes that had marijuana growing in it.
“Q. Approximately how large was the clearing that you said this trailer was in?
“A. I couldn’t estimate that.
“Q. Small clearing?
“A. A small clearing for the trailer?
“Q. For the trailer?
“A. No, it wasn’t really that small.
“Q. Were there a lot of trees next to what you spotted and believed to be marijuana?
“A. It was in the bushes next to the tree line.

“Q. And you say you could spot these marijuana plants and these trees and other vegetation that was green from five hundred feet above the surface of the ground?
“A. That’s correct.
*766 “Q. Are there any other people that are employed for the State of Alabama that can so spot marijuana plants growing from five hundred feet?
“A. Not to my knowledge. We are in the process of training some.
“Q. Could you tell me how you train someone to be able to spot green marijuana plants from other green plants?
“MR. JONES [State’s attorney]: I object, Your Honor.
“THE COURT: Overruled.
“A. The only way you can really train them is to find the marijuana and show it to them and on a continual basis recognition.
“Q. Isn’t it a fact though it’s a lot easier to spot marijuana growing in a large field where there are no trees as opposed to a tree-studded area with a lot of growth and vegetation?
“A. Not necessarily.”
Investigator Peavey testified that on July 30,1982, at approximately 2:15 he was in the vicinity of defendant’s home and that the following occurred:
“Q. You were out near his [defendant’s] property on or right adjacent to his property at the time that you received a call from Mr. Conrad that he saw marijuana?
“A. In the vicinity, yes.
“Q. You were adjacent to his property? You were right near his property when Mr. Conrad first heard or told you that there was marijuana growing?
“A. That is correct.
“Q. So you knew where it was prior to Mr. Conrad telling you?
“A. No, I did not.
“Q. You just indicated that you were right near his property?
“A. That’s right. But I didn’t say anything about I knew it was there.
“Q. Why did you go specifically to Mr. Washington’s property then?
“A. Because when Officer Conrad spotted the plants he advised me where they were.

“Q. How far from the main road-no, back up. Could you tell the Court where Mr. Washington’s property is located in Macon County? Just roughly tell the Court.
“A. It’s located in the Midway Community. '
“Q. Off what county highway is that located?
“A. That’s off the old V.A. Road in that area.
“Q. And that is a paved county road?
“A. That’s correct.
“Q. How far off the paved county road is Mr. Washington’s property located?
“A. How far is it? I would say approximately a mile. That’s my guess, I’m not sure.
“Q. So you were on that-you had taken the county road, the paved county road. You had gone down the dirt road and you were right next to Mr. Washington’s property prior to Mr. Conrad telling you that marijuana was spotted?
“A. That’s correct.
“Q. So you had specifically gone directly to Mr. Washington’s property?
“A. No, I had not gone directly to Mr. Washington’s property.
“MR. BULLS [Defendant’s trial attorney]: Your Honor, we don’t have any further questions.
“CROSS-EXAMINATION
“BY MR. JONES:
“Q. Detective Peavey, when you were directed to the location of the marijuana plants that were growing, where specifically in relationship to the trailer was the plants growing?
“A. About seventy-five to a hundred yards to the right of the trailer.
“Q. Did you have occasion to do anything with those plants?
“A. Yes.
“Q. What did you do with those plants?
“A. We pulled them up.
“Q. How many plants were there?
“A. Twenty-seven.
“Q. Twenty-seven?
*767 “A. That s right.
“Q. Was there any obstruction to your view of the plants as you followed the directions of ABI Agent Conrad?
“A. No, they were in plain view.
“MR. JONES: That’s all, Judge.
“REDIRECT EXAMINATION
“BY MR. BULLS:
“Q. You saw those plants prior to Mr. Conrad telling you where they were, didn’t you, Detective Peavey?
“A. Officer Conrad advised me to look to my right. I looked to my right and they were in plain view.
“Q. You say they were seventy-five to a hundred yards from where his trailer was located?
“A. Approximately.
“Q. Were there any other houses around that area?
“A. Not in that particular area. There were some further up the street.
“Q. When you say further up the street you are talking about a hundred yards up the street?
“A. In my judgment, further than that.
“Q. A hundred and fifty yards? About the same distance as they were from Mr. Washington’s trailer?
“A. No, sir.
“MR. BULLS: No further questions.
“RE-CROSS EXAMINATION
“BY MR. JONES:
“Q. Were there any other houses or trailers in the clear area where the plants and defendant’s trailer was located?
“A. Were there any other houses?
“Q. Yes, sir. Or trailers in the cleared area where the defendant’s trailer was located?
“A. No, sir, not to my knowledge.”
Defendant also testified at the hearing of the motion to suppress. He said that he was at his “mobile home about a half a mile off of the Midway Road” on July 30, 1982, that his “little boy” nearly nine years of age was with him and that “approximately 2:30, 2:45 police officers came to his home,” and he was thereafter arrested by them. He said:
“Q. At what point were you placed under arrest?
“A. Well, after they had pulled the plants and put them in the truck and that would have been maybe 45 minutes to an hour after they had been there. First, I was arrested by Detective Kindell.”
The defendant further testified on the hearing of the motion to suppress that he was placed under arrest “approximately fifteen to twenty minutes after they got out there.”
The specific issue now under consideration is whether the evidence as to the possession of marijuana by defendant was obtained in contravention of the “right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures,” provided by the Fourth Amendment to the Constitution of the United States. No warrant for the search of defendant’s property or the seizure of the marijuana involved was issued. Attorneys for each of the parties have cited numerous authorities on the subject. They have apparently narrowed the area of disagreement between them to whether the evidence sought to be suppressed was in open view of those who obtained it, which would place it within one of the few well-recognized exceptions to the principle that the evidence would not be admissible if obtained without the issuance of a valid warrant therefor. It was held in Harris v. United States, 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067 (1968):
“... It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence. Ker v. California, 374 U.S. 23, 42-43, 83 S.Ct. 1623 [1634-1635], 10 L.Ed.2d 726, 743 (1963); United States v. Lee, 274 U.S. 559, 47 S.Ct. 746, 71 L.Ed. 1202 (1927); Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924).”
*768 In pressing his contention that the evidence under consideration does not come within the “plain view” exception, appellant contends “the police officer must discover incriminating evidence ‘inadvertently’ under the plain view doctrine.” Whatever comfort appellant obtains out of the large number of cases in which it is indicated that the “open view” exception does not apply unless the evidence is observed “inadvertently,” he does not convince us that the evidence was not admissible in the instant case, in which there was no intrusion whatever upon the property of defendant by either of the officers at the time they observed the marijuana in plain view. Officer Conrad, while flying at an altitude in excess of 500 feet over defendant’s property, was not violating any right of defendant, and in going down the dirt road next to defendant’s property, Officer Peavey was not violating any legal duty he owed the defendant. To say, under such circumstances, that evidence of what they found must have been inadvertently found by them would constitute a semantic puzzle but would not constitute a logical conclusion, we think. The trial court was not in error in overruling the phase of defendant's motion to suppress the evidence as to the marijuana found growing upon defendant’s land.
B.
We now consider the ruling of the court overruling defendant’s motion to suppress the evidence as to what was heard, felt, seen, smelled or tasted by the officers in the mobile home of defendant on the afternoon of July 30, 1982. At the hearing as to such proposed evidence, Officer Darrell Persons, of the Tuskegee Police Department, testified that as he went to defendant’s mobile home the following occurred:
“A. Then he came out. And we explained to him why we were out there.
“Q. What did you do to him, if anything?
“A. All right. At that time after we noticed that the plaintiff...

“Q. What, if anything else, was said or done at that point?
“A. He advised that he had to go back to the trailer.
“Q. Then what happened or what was said?
“A. I asked him did he object to me going back in there with him.
“Q. What did he say?
“A. He said no.
“Q. Then what happened?
“A. We went inside. He gave some keys to another gentleman that was inside.
“Q. Did that gentleman leave?
“A. Yes, he did.
“Q. Did the kid leave?
“A. Yes.
“Q. While in the house, what, if anything, did you observe?
“A. I observed-well, I smelled a strong aroma of marijuana.

“Q. What, if anything else, did you observe other than the strong aroma of marijuana?
“A. Plastic bags, rolling paper, other paraphernalia.
“Q. What other paraphernalia specifically did you observe?
“A. Things that you weigh, a weighing tray.
“Q. Scales?
“A. Scales.
“Q. At some point after that did you and the defendant exit the house?
“A. Yes, we did.
“Q. Was the door locked?
“A. I didn’t know at the time whether or not it was locked or not.
“Q. Did you find out later that it had been locked?
“A. Yes.
“Q. By whom?
“A. By the defendant.
“Q. When?
“A. When we exited out. We came out.”
*769 The defendant took the stand on the hearing on the motion to suppress the evidence found in the trailer. He denied that he gave his consent to the entry of the trailer by any of the officers. At the conclusion of the hearing of the phase of the motion to suppress the evidence as to what was observed in the trailer, the court ruled as follows:
“THE COURT: The ruling is that all of the testimony relating to Officer Person’s initial visit inside the trailer is admissible. None of the testimony concerning the subsequent thing after the man had locked the door is admissible.”
We are not persuaded that the trial court was in error in concluding that defendant voluntarily, intelligently and understandingly consented to whatever search was made by the officer of the inside of the mobile home.
II.
“THERE WAS NO EVIDENCE TO CONNECT THE APPELLANT WITH THE GROWING OF MARIJUANA, THEREBY EVIDENCING THAT APPELLANT’S MOTION TO EXCLUDE THE STATE’S EVIDENCE WAS CORRECTLY DENIED.”
The witnesses David Conrad, Henry Peavey and Darrell Persons testified on the trial of the case. Their testimony included testimony that was substantially the same as their testimony on the hearing of the motion to suppress. A repetition thereof would serve no useful purpose. A portion of the testimony of Officer Conrad on the trial of the case was as follows:
“Q. Did you also on that date observe any type of housing facility in or about the area of the plants you observed?
“A. There was a house trailer approximately a hundred feet or so from the plants.
“Q. Now, the marijuana plants that you observed on July 30th, 1982, would you describe their location in regard to the surrounding area?
“A. There was a cleared out area where the trailer was sitting. And just as you’re facing the trailer — I believe it’s facing to the west, to your right there was some — like it had been pulpwood and brush growing up about four or five feet tall. The plants were among the brush.
“Q. The plants were among the brush?
“A. Yes.”
Officer Peavey testified on the trial in part as follows:
“Q. Now, let’s talk about the area that you were in at that time. Describe the road that you were on, Detective Peav-ey?
“A. Okay. It was a dirt road that dead ended at the trailer.
“Q. And do you know who lived in the trailer at that time?
“A. Yes, sir, I do.
“Q. And who is that?
“A. Mr. Washington [whom he identified as the defendant in the case],

“A. At this time, I looked to the left. The trailer was sitting to the left of the plants. Mr. Washington came out of the trailer. He looked to the left. The plane was flying over to the left. He looked to the left. After looking to the left, he looked directly in the area where the plants were which was to the right.
“Q. How large an area is this you are talking about, Detective Peavey? Is it a large clearing or a small clearing?
“A. The plants.
“Q. The entire area there, the clearing?
“A. Medium size area.
“Q. Now, were there any other houses in the cleared area?
“A. No, sir, there weren’t.
“Q. Was there any trailers?
“A. No, sir.

“Q. In your judgment, how many feet away from the dirt road that led into the cleared area were the plants?
“A. From the dirt road?
“A. From the dirt road the plants were probably ten to fifteen feet.
*770 “Q. Now, from the trailer to the plants would be approximately how many feet?
“A. Approximately seventy-five to a hundred feet.”
Officer Persons testified on the trial in part as follows:
“Q. How far is it from the trailer to where the plants were growing?
“A. I would say about 75 to 100 feet.
“Q. Okay. Now, what did you do as you went down to the trailer where the defendant was located?
“A. As we went down and parked the vehicle and got out the defendant came outside and asked—
“Q. Outside of the trailer?
“A. Outside of the trailer.
“Q. Completely outside?
“A. Completely outside and shut the door behind him.
“Q. Then what happened?
“A. Then he said what’s the problem?
“Q. All right. Then what happened?
“A. And then he was placed under arrest.”
The undisputed evidence shows, and there is no contention to the contrary, that the plants taken from that part of the land described were turned over to a chemistry coordinator of the Alabama Department of Forensic Science, who testified:
“My examination revealed that the plant material was marijuana; genus in species cannabis sativa L. And the weight of the material was 2,161.5 grams which is 4.76 pounds.

“Q. Okay. So when we talk about 4.76 pounds, we are only talking about the weight of the leaves and not the weight of the stalks?
“A. Yes, sir, that’s correct.”
Appellant is correct in his contention that upon consideration by the trial court of a motion to exclude the evidence interposed by defendant at the close of the state’s case and before defendant had presented any evidence, the trial court was “limited to consideration of evidence which was before it at the time the motion was made.” Crafts v. State, Ala.Cr.App., 439 So.2d 1323, 1324, cert. denied, (1983), furnishes solid support for the contention. Appellant relies upon Crafts also for his further contention that the trial court was in error in overruling his motion to exclude, for the reason urged by him that there was no substantial evidence at that time that the marijuana seized by the officers and repeatedly referred to in the evidence was in his actual or constructive possession. The similarity between some of the evidence in Crafts and the evidence in the instant ease furnishes a reasonable basis for the contention. In other material respects, the facts in the instant case are distinguishable from those in Crafts. In Crafts, the defendant was not at home at the time of the seizure; in this case, the defendant was at home and manifested concern as to what the officers were doing with or to the marijuana, by leaving the door of his mobile home and asking the officers, “What’s the problem?” In the transcript are photographs in evidence of the growing marijuana, the mobile home and its location relative to some of the growing marijuana, some of the marijuana that had been seized, the height and density of the growth of marijuana and the location in the road where Officer Peavey was standing or walking when he first observed the marijuana, which serve as strong pictorial evidence to the effect that an adult who had been living for some time in the trailer as his own home would have known that it was marijuana. When these facts are taken into consideration in connection with other circumstances shown, including particularly the existence in the mobile home of “a strong aroma of marijuana” of “plastic bags, rolling papers, other paraphernalia,” including a “weighing tray,” we must conclude that the State produced substantial evidence of defendant’s guilt of unlawfully possessing for trafficking 4.76 pounds of marijuana, and that the trial court was not in error in overruling defendant’s motion to exclude the State’s evidence.
*771 hi.
“WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING APPELLANT’S MOTION FOR A NEW TRIAL AS AMENDED?”
Appellant’s argument in support of this issue is tripartite. In the first part, appellant argues that the motion for a new trial “for the most part, was based on matters constituting reversible error discussed in arguments I and II,” which we have already considered and determined adversely to appellant.
In the second part of his brief as to this issue, appellant argues that the judgment of sentence was not in conformity with the verdict of the jury and the judgment of conviction. The verdict of the jury was: “We, the jury find the defendant guilty of unlawfully possessing for trafficking in cannabis (marijuana).” Appellant argues that, in conformity with the verdict and the judgment of conviction, the appellant “could have been sentenced under the Code of Alabama 1975, Section 20-2-70, which doesn’t carry a mandatory fine of $25,000 and he would have been eligible for probation.” We disagree. As noted at the commencement of this opinion, the indictment was for a violation of Section 20-2-80 of the Code and specifically charged that defendant “unlawfully possessed for trafficking 4.76 pounds of cannabis (marijuana).” The crime charged, as it relates to marijuana, is in some respects similar to the crime charged by Section 20-2-70, but it is not the same. We disagree with appellant’s contention in this respect and specifically with his contention that, “the amount of marijuana involved in this case was a fact question that should have been determined by the jury.” The undisputed evidence showed that the marijuana involved was “in excess of 2.2 pounds but less than 2,000 pounds,” for which § 20-2-80(l)a prescribes “a mandatory minimum term of imprisonment of three calendar years” and “a fine of $25,000.00.”
By the third part of appellant’s argument under Issue III, he challenges the constitutionality of Section 20-2-80 by urging that it prescribes cruel and unusual punishment. The same contention was determined adversely to appellant in Wheatt v. State, per Judge Bowen, now Presiding Judge, Ala.Cr.App., 410 So.2d 479, 482-483 (1982).
The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur.